**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In Re: | |
|     Lawrence E. Cuddy, Jr. and | Chapter 7 |
|     Betsy J. Graf Cuddy, | |
|         Debtors | Case No. 04-12166-WCH |
| | |
|     Danvers Savings Bank, | |
|         Plaintiff | Adversary Proceeding |
| | |
| vs. | Case No. 04-1208 |
| | |
|     Lawrence E. Cuddy, Jr., | |
|         Defendant | |

05 10 7

**MOTION TO DISTRICT COURT FOR LEAVE TO APPEAL**
**INTERLOCUTORY ORDER**

**NOW COMES** Donald H. Adler, Esq., Thomas G. Nicholson, Esq. and the firm of Finneran

& Nicholson, P.C. (collectively the "Counsel"), counsel to Lawrence E. Cuddy, Jr. (the

"Debtor/Defendant") and hereby moves the Court grant Counsel leave to appeal the Bankruptcy

Court's denial of Counsel's Motion to Withdraw Appearance entered on March 29, 2005 ("Order").

In support of its Motion for Leave to Appeal the Bankruptcy Court's Interlocutory Order, Counsel

submits the following:

<u>**JURISDICTION**</u>

1.      Pursuant to 28 U.S.C. § 158(a)(3) and Bankr. P. Rule 8001(b), the United States

District Court for District of Massachusetts has the authority to hear appeals from interlocutory

orders of a bankruptcy judge, upon appellant's filing of a notice of appeal, motion for leave to appeal

and a statement of election to be heard before the District Court pursuant to 28 U.S.C. § 158(c).

2.      The Bankruptcy Court's Order (attached hereto <u>Exhibit A</u>) in accordance its decision dated March 24, 2005 (attached hereto as <u>Exhibit B</u>) was entered in the docket on March 29, 2005. Pursuant to Bankr. P. Rule 8002, the appeal shall be filed within ten days of the date of entry of the order.  As a result, Counsel's Notice of Appeal shall be submitted no later than April 8, 2005.

3.      The order denying Counsel's Motion to Withdraw is an appropriate interlocutory order for appellate review as the (1) "order conclusively resolves an important question; (2) which is entirely separate from the merits"; and (3) "the matter will evade adequate review on appeal" if not appealed at this time.  <u>Lieberman v. Polytop Corp.</u>, 2001 WL 196759 (1st Cir. Feb. 21, 2001) (unpublished decision) (attached hereto as <u>Addendum A</u>) (holding denial of motion to withdraw proper for appeal under collateral order doctrine); *see also* <u>Rivera-Domenech v. Calvesbert Law Offices PSC</u>, 2005 WL 708305 (1st Cir. March 29, 2005) (noting attorney "should have pursued the interlocutory appeal at the time of the denial of his motion to withdraw his appearance.") (Attached hereto as <u>Addendum B</u>).

**STATEMENT OF FACTS**

4.      Counsel hereby incorporates by reference Paragraphs 1 through 3, as if fully set forth herein.

5.      On or about May 10, 2004, the Debtor entered into a written Engagement Letter and Fee Agreement with Counsel.  The Fee Agreement specifically set forth the terms and conditions of Counsel's representation as successor counsel in Debtor's Chapter 7 case and any other matter that arose as a result. See <u>Exhibit C</u> attached hereto (the "Fee Agreement").

6.      The Fee Agreement sets forth Debtor/Defendant's obligations to pay all Out-of-Pocket, Other Disbursements and Fees (<u>Exhibit C</u> at ¶ 2(a)) at Counsel's Rates for Professional

Services (<u>Exhibit C</u> at ¶ 3(a)), Counsel's billing policies (<u>Exhibit C</u> at ¶ 4(a)(i)), and most importantly with regard to the Motion to Withdraw, a provision entitled, Withdrawal from Representation Where Non-Payment (<u>Exhibit C</u> at ¶ 5).

7.    The Fee Agreement executed and agreed to by Debtor/Defendant, allows Counsel to withdraw in the event that the Debtor/Defendant fails to replenish the retainer and/or fails to pay any outstanding invoices.  Specifically, ¶ 5 of the Fee Agreement provides as follows:

> "**<u>Withdrawal from Representation Where Non-Payment</u>**.  It is agreed that if any retainer is not replenished (for the initial Matter and/or any and all subsequent and/or additional legal services requested to be performed and performed by the Firm) to the amount requested by the Firm within 15 days of the date of the bill requesting the replenishment and/or interim or final statement, bill or invoice for services rendered is not paid, when and as due, the Firm may immediately cease providing services under this Agreement and **the Client will not oppose the Firm from withdrawing its representation of the Client and, if requested, Client will consent in writing to the Firm removing any court appearance it may have filed in connection with representation of the Client.  This is an essential and vital agreement to the Firm's agreeing to provide services rendered.**"

8.    The Debtor/Defendant has breached his contractual obligations owed to Counsel under the Fee Agreement by deliberately disregarding his written obligations thereunder.

9.    As a condition precedent to Counsel's representation of the Debtor/Defendant and Counsel's filing a Notice of Appearance in the Adversary Proceeding on the Debtor/Defendant's behalf ("Adversary Appearance"), the Debtor/Defendant agreed to pay Counsel an additional retainer before Counsel filed its Adversary Appearance (the "Retainer").  The Debtor/Defendant did not pay the Retainer in advance, however, he did agree to pay the Retainer immediately ("Debtor's Assurance") after Counsel filed the Adversary Appearance and the Debtor/Defendant's Answer in the Adversary Proceeding (the "Answer").

10.    On August 9, 2004, in reliance on Debtor's Assurance, Counsel filed the Adversary Appearance and, simultaneously therewith, filed the Answer.

11.    Counsel filed its Adversary Appearance and the Answer in reliance on the Fee Agreement executed by Debtor/Defendant, Debtor/Defendant's oral agreement to pay Counsel an additional Retainer and to protect the interests of the Debtor/Defendant in the Adversary Proceeding.

12.    Between July 7, 2004 and December 29, 2004, Counsel made numerous telephone calls to Debtor/Defendant, left numerous detailed voice mails for the Debtor/Defendant, had multiple telephone and personal conferences with Debtor/Defendant, sent multiple letters to Debtor/Defendant and e-mailed numerous correspondence to Debtor/Defendant.    All such correspondence notified the Debtor/Defendant of his obligation to pay his fees and the Retainer to Counsel, attempting to make arrangements to fulfill these obligations and as early as two months prior to Counsel filing its Motion to Withdraw, provided the Debtor/Defendant with warnings that Counsel would withdraw its appearance should Debtor/Defendant fail and/or refuse to pay the Retainer and the balance of the fees due Counsel.

13.    During this approximately six-month time frame from July through December, 2004, Counsel engaged in approximately twenty-two (22) communications with and/or directed to the Debtor/Defendant regarding the non-payment of fees and Retainer and relaying to him in November and December, 2004, the agreement that non-payment of the same would result in Counsel's withdrawing its appearance and terminating representation of Debtor/Defendant.

14.    For a two month period from August through September, 2004, Debtor/Defendant failed to respond or communicate with Counsel regarding his obligation to pay fees and fund the Retainer, Counsel's communications regarding its representation in the Adversary Proceeding, and also with regard to other material and relevant matters in Debtor/Defendant's case under Chapter 7.

15.    Counsel was advised by the Debtor/Defendant that he did not have the resources to honor Debtor's Assurances, Debtor/Defendant's financial commitments under the Fee Agreement

to Counsel and, moreover, that he had no prospects to be able to do so.

16.    At the non-evidentiary hearing before this Court on January 26, 2005, Counsel, before the Bankruptcy Court, brought to the court's attention that Debtor/Defendant failed to satisfy his financial and other obligations to Counsel, in that he has failed and/or refused to pay the outstanding fee balance and the Retainer due Counsel under the Fee Agreement and under the assurances.

17.    The Bank filed the Adversary Proceeding on June 25, 2004. The plaintiff in the Adversary Proceeding, Danvers Savings Bank ("Bank") did nothing to prosecute or advance its case until December 28, 2004 when it filed a Motion to Examine Debtor Pursuant to Rule 2004(a) which was "Denied" by the Court (the "Motion to Examine"). On April 6, 2005, the Bank commenced its deposition of the Debtor/Defendant, which was suspended and is scheduled to continue on April 26, 2005. There are no pending motions before the Bankruptcy Court and the case has not been scheduled for any case conferences or a pre-trial conference. The case does not appear on a trial list at this time.

18.    In essence, other than the initial filings of the Adversary Complaint and the Answer, and the Bank's deposition of Debtor/Defendant, the Adversary Proceeding is in its infancy. Debtor/Defendant will have sufficient time to retain and engage the services of new counsel. Counsel will cooperate fully with any successor counsel.

19.    As of March 19, 2005, Debtor/Defendant has an outstanding balance due Counsel. The retainer was requested by Counsel at least eight (8) months ago and remains unpaid other than a nominal payment of $2,836.09. Also, as of March 19, 2005, the balance due Counsel for services rendered and costs incurred in the Adversary Proceeding was $1,459.10.

20.    As of March 19, 2005, Counsel has received payment from the Debtor/Defendant for services rendered and costs incurred in the Chapter 7 matter in the amount of $12,811.91, from April

28, 2004 through March 19, 2005 for 55 hours. The balance due for the Chapter 7 case is $2,659.51.

21.     As of March 19, 2005, Counsel has received payment from the Debtor/Defendant for services rendered and costs incurred in the Adversary Proceeding in the amount of $2,836.09, from June, 2004 through March 19, 2005, for 17.86 hours. The balance due for the Adversary Proceeding is $1,458.10.

22.     Counsel projects that at its current hourly rates, the fees and costs Debtor/Defendant would incur to defend the Adversary Proceeding would be at a minimum $35,000.00 and likely closer to $50,000.00, based on the following:

- It is projected that given the nature of the claims alleged in the Adversary Complaint, that Counsel may take six (6) to ten (10) depositions at a cost of about $2,000.00 each.

- The out-of-pocket costs for a deposition and transcript are a minimum of $1,200.00 for each day of deposition.

- Counsel expects a four (4) to five (5) day trial. The costs alone, without reflecting fees for Counsel's services, are projected in excess of $10,000.00.

23.     Counsel is a small, five (5) attorney firm.

24.     Debtor did not object to the Motion to Withdraw.

### STATEMENT OF QUESTIONS AND RELIEF SOUGHT

25.     The sole question involved on the appeal is whether the Bankruptcy Court abused its discretion in denying Counsel's Motion to Withdraw Appearance.

26.     Counsel respectfully requests that this Court enter an Order:

(a)     Granting Counsel leave to file its Appeal of the denial of Counsel's Motion to Withdraw Appearance, and;

(b)    Upon such appeal, that this Court enter an Order reversing the Bankruptcy
Court's Order as an abuse of the court's discretion; and

(c)    Granting such other and further relief as is just.

### STATEMENT OF REASON RELIEF SHOULD BE GRANTED

27.    The Bankruptcy Court's Order denied Counsel's Motion to withdraw its appearance
and, therefore requires Counsel to continue representing Debtor/Defendant in this action. As a
result, if Counsel is not granted leave to file an appeal of the Order, Counsel's appeal will become
moot and Counsel will be left without remedy and will suffer irreparable injury. An attorney's
continued representation of a client throughout the trial without filing an interlocutory appeal of the
denial of will effectively moot "any relief from the erroneous order denying his motion to withdraw."
Rivera-Domenech, 2005 WL 708305.

28.    "[A]n order compelling a lawyer to work without prospect of compensation is
unrelated to the merits of the dispute, cannot be rectified at the end of the case, and has a potential
to cause significant hardship." Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins.
Co., 310 F.3d 537, 539 (7th Cir. 2002). As a result, such an order is immediately appealable as a
collateral order. Id.

29.    The prosecution of the action by the Plaintiff will not be disrupted by granting
Counsel leave to file Counsel's appeal. There are no motions pending, no pre-trial or case
management conference dates assigned and no trial date has been assigned. There has been little
discovery done, to date, with the only exception being the deposition of the Debtor/Defendant was
commenced by the Bank on April 6, 2005.

30.    Requiring Counsel to continue to represent the client after denial of its Motion to
Withdraw at this time would have the effect of making the Court's Order "effectively unreviewable"

and forcing Counsel to represent a client against his will is irreparable. Whiting v. Lacara, 187 F.3d 317, 320 (2d Cir. 1999). "An order requiring an attorney to continue representing a client in a civil action without compensation may subject the attorney to irreparable harm and amount to an order of specific performance." Lieberman v. Polytop Corp., 2001 WL 196759 (1st Cir. 2001) (unpublished decision).

31.     Counsel has a strong likelihood of success on the merits on its appeal. While a motion to withdraw representation "is a matter addressed to the discretion of the trial court and will be reversed on appeal only when the trial court has abused its discretion," the denial of such a motion may be revered on appeal where the withdrawal is consistent with the Rules of Professional Conduct in effect and where the attorney faces substantial additional financial exposure and potential civil liability to the client if the attorney were not allowed to withdraw. Rivera-Domenech, 2005 WL 708305; Lieberman, 2001 WL 196759; *see also* Barton v. Dist. of Columbia, 209 F.R.D. 274, 278 (D. D.C. 2002).

32.     In circumstances similar to the case at bar, the United States Court of Appeals for the First Circuit in two instances has "found the denial of a motion to withdraw to be an abuse of discretion" and refused to place the attorney in a position in which he would have "to front the necessary expenses, without any real assurance that he will be paid for any of it, especially where he already is owed a substantial sum and the client has violated the written fee agreement . . . [and] could expose himself to civil liability to his client." Rivera-Domenech, 2005 WL 708305; Lieberman, 2001 WL 196759.

33.     In Rivera-Domenech and Lieberman, the First Circuit determined that the lower court abused its discretion in refusing to allow the attorney to withdraw as it would expect "too much of counsel to expend the additional energy necessary to go to trial, and to front the necessary expenses

without any real assurance that he will be paid for any of it." Rivera-Domenech, 2005 WL 708305 (*quoting* Lieberman, 2001 WL 196759).

34.    Unlike the situations in Rivera-Domenech and Lieberman, where the cases were "nearly ready for trial," the prosecution of the Adversary Proceeding is in its infancy. Counsel will be faced with the "substantial additional financial exposure" not only trial itself, but for all pre-trial matters, including further discovery.

35.    Further, as was the case in Lieberman, the standards of conduct of attorneys practicing before this Court are governed by a professional conduct rule that states that an attorney may withdraw the client "fails substantially to fulfil an obligation to the attorney." *See* Mass. R. Prof. C. 1.16. In Lieberman, the First Circuit determined that the client had failed to substantially fulfil an obligation to the attorney by failing to pay overdue legal fees despite numerous warnings that failure to pay would result in withdrawal, needing to be repeatedly reminded to replenish the retainer, and where the client had no reasonable prospect of being able to pay for the legal services. Lieberman, 2001 WL 196759; *see also* Fidelity Nat'l Title Ins. Co., 310 F.3d at 540-41 (determining lower court abused discretion in denying counsel's motion to withdraw where a small firm had been unpaid for legal fees, would be burdened by prospect of further uncompensated outlays, had provided reasonable notice to the client of the failure to pay and right to withdraw and where motion to withdraw was brought during a quiet period in the litigation). Under these circumstances, the First Circuit determined that withdrawal was consistent with Rules of Professional Conduct. Lieberman, 2001 WL 196759.

6.    Counsel's Motion for Stay Pending Appeal is not contrary to public policy. Counsel's Motion to Withdraw is consistent with the Massachusetts Rules of Professional Conduct allowing an attorney to withdraw from representation of a client where the client has failed substantially to

meet his obligations to the attorney. Mass. R. Prof. C. 1.16. Further, the Debtor/Defendant is in breach of his contract and his obligations of good faith with Counsel. *See* Hammond v. T.J. Litle & Co., Inc., 809 F. Supp. 156, 163 (D.Mass. 1992) ("a client, when engaging counsel, assumes an obligation of good faith and must act with due regard for an attorney's right to be compensated for work done on a client's behalf.").

WHEREFORE, Counsel respectfully requests that this Court grant its Motion for Leave to Appeal the Interlocutory Order of the Bankruptcy Court denying Counsel's Motion to Withdraw Appearance.

Respectfully submitted,
Finneran & Nicholson, P.C.

Dated: April 8, 2005

Finneran & Nicholson, P.C.
Donald H. Adler, Esq. (BBO# 012620)
Of Counsel
Finneran & Nicholson, P.C.
44 Merrimac Street
Newburyport, MA 01950
Telephone: (978)462-1514
E-mail: bankruptcy@finnic.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
|     Lawrence E. Cuddy, Jr. and | ) | Chapter 7 |
|     Betsy J. Graf Cuddy, | ) | |
|         Debtors | ) | Case No. 04-12166-WCH |
| | ) | |
| | ) | |
|     Danvers Savings Bank, | ) | |
|         Plaintiff | ) | Adversary Proceeding |
| | ) | |
|     vs. | ) | Case No. 04-1208 |
| | ) | |
|     Lawrence E. Cuddy, Jr., | ) | |
|         Defendant | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I, Donald H. Adler, Of Counsel, hereby certify that on April 8, 2005, I caused a copy of the Motion to District Court for Leave to File Appeal, to be served on the parties set forth on the following Service List at the addresses indicated thereon by electronic filing notification, unless otherwise indicated.

Dated: April 8, 2005

                              Donald H. Adler, Esq. (BBO# 012620)
                              Of Counsel
                              Finneran & Nicholson, P.C.
                              44 Merrimac Street
                              Newburyport, MA 01950
                              Telephone: (978)462-1514
                              E-mail: bankruptcy@finnic.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

|  |  |
|---|---|
| In Re:  )<br>  Lawrence E. Cuddy, Jr. and  )<br>  Betsy J. Graf Cuddy,  )<br>  Debtors  )<br> _____  )<br>  )<br>  Danvers Savings Bank,  )<br>  Plaintiff  )<br>  )<br>  vs.  )<br>  )<br>  Lawrence E. Cuddy, Jr.,  )<br>  Defendant  )<br> _____  ) | Chapter 7<br><br>Case No. 04-12166-WCH<br><br><br><br>Adversary Proceeding<br><br>Case No. 04-1208 |

### SERVICE LIST

John Aquino, Esq.
Chapter 7 Trustee
Anderson & Aquino, LLP
260 Franklin Street
Boston, MA 02110

Gary L. Donahue, Esq.
Office of the U.S. Trustee
10 Causeway Street
O'Neill Federal Building
Boston, MA 02222

William R. Moorman, Jr. Esq.
Brendan C. Recupero, Esq.
Craig and Macauley
Professional Corporation
600 Atlantic Avenue
Boston, MA 02210
(Counsel to Betsy G. Cuddy)

Lawrence E. Cuddy, Jr.
48 Green Street
Newbury, MA 01951
(Debtor/Defendant)

Betsy G. Cuddy
36 Rolfes Lane
Newbury, MA 01951
(Co-Debtor)

Astrid Daly, Esq.
40 Reservoir Drive
Weare, NH 03281
(Counsel to Danvers Savings Bank)

Danvers Savings Bank
Attn: Alan Bryne, Vice President
One Conant Street
Danvers, MA 01923

Robert L. Marder, Esq.
85 Exchange Street, Suite L10
Lynn, MA 01901
(Counsel to Danvers Savings Bank)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In Re: | ) | |
| Lawrence E. Cuddy, Jr. and | ) | Chapter 7 |
| Betsy J. Graf Cuddy, | ) | |
| Debtors | ) | Case No. 04-12166-WCH |
| | ) | |
| | ) | |
| Danvers Savings Bank, | ) | |
| Plaintiff | ) | Adversary Proceeding |
| | ) | |
| vs. | ) | Case No. 04-1208 |
| | ) | |
| Lawrence E. Cuddy, Jr., | ) | |
| Defendant | ) | |
| | ) | |

**MOTION TO DISTRICT COURT FOR LEAVE TO APPEAL**
**INTERLOCUTORY ORDER**

**NOW COMES** Donald H. Adler, Esq., Thomas G. Nicholson, Esq. and the firm of Finneran

& Nicholson, P.C. (collectively the "Counsel"), counsel to Lawrence E. Cuddy, Jr. (the

"Debtor/Defendant") and hereby moves the Court grant Counsel leave to appeal the Bankruptcy

Court's denial of Counsel's Motion to Withdraw Appearance entered on March 29, 2005 ("Order").

In support of its Motion for Leave to Appeal the Bankruptcy Court's Interlocutory Order, Counsel

submits the following:

### JURISDICTION

1.     Pursuant to 28 U.S.C. § 158(a)(3) and Bankr. P. Rule 8001(b), the United States

District Court for District of Massachusetts has the authority to hear appeals from interlocutory

orders of a bankruptcy judge, upon appellant's filing of a notice of appeal, motion for leave to appeal

and a statement of election to be heard before the District Court pursuant to 28 U.S.C. § 158(c).

2. The Bankruptcy Court's Order (attached hereto Exhibit A) in accordance with its decision dated March 24, 2005 (attached hereto as Exhibit B) was entered in the docket on March 29, 2005. Pursuant to Bankr. P. Rule 8002, the appeal shall be filed within ten days of the date of entry of the order. As a result, Counsel's Notice of Appeal shall be submitted no later than April 8, 2005.

3. The order denying Counsel's Motion to Withdraw is an appropriate interlocutory order for appellate review as the (1) "order conclusively resolves an important question; (2) which is entirely separate from the merits"; and (3) "the matter will evade adequate review on appeal" if not appealed at this time. Lieberman v. Polytop Corp., 2001 WL 196759 (1st Cir. Feb. 21, 2001) (unpublished decision) (attached hereto as Addendum A) (holding denial of motion to withdraw proper for appeal under collateral order doctrine); *see also* Rivera-Domenech v. Calvesbert Law Offices PSC, 2005 WL 708305 (1st Cir. March 29, 2005) (noting attorney "should have pursued the interlocutory appeal at the time of the denial of his motion to withdraw his appearance.") (Attached hereto as Addendum B).

## STATEMENT OF FACTS

4. Counsel hereby incorporates by reference Paragraphs 1 through 3, as if fully set forth herein.

5. On or about May 10, 2004, the Debtor entered into a written Engagement Letter and Fee Agreement with Counsel. The Fee Agreement specifically set forth the terms and conditions of Counsel's representation as successor counsel in Debtor's Chapter 7 case and any other matter that arose as a result. See Exhibit C attached hereto (the "Fee Agreement").

6. The Fee Agreement sets forth Debtor/Defendant's obligations to pay all Out-of-

Pocket, Other Disbursements and Fees (Exhibit C at ¶ 2(a)) at Counsel's Rates for Professional Services (Exhibit C at ¶ 3(a)), Counsel's billing policies (Exhibit C at ¶ 4(a)(i)), and most importantly with regard to the Motion to Withdraw, a provision entitled, Withdrawal from Representation Where Non-Payment (Exhibit C at ¶ 5).

7.     The Fee Agreement executed and agreed to by Debtor/Defendant, allows Counsel to withdraw in the event that the Debtor/Defendant fails to replenish the retainer and/or fails to pay any outstanding invoices. Specifically, ¶ 5 of the Fee Agreement provides as follows:

> "**Withdrawal from Representation Where Non-Payment**. It is agreed that if any retainer is not replenished (for the initial Matter and/or any and all subsequent and/or additional legal services requested to be performed and performed by the Firm) to the amount requested by the Firm within 15 days of the date of the bill requesting the replenishment and/or interim or final statement, bill or invoice for services rendered is not paid, when and as due, the Firm may immediately cease providing services under this Agreement and **the Client will not oppose the Firm from withdrawing its representation of the Client and, if requested, Client will consent in writing to the Firm removing any court appearance it may have filed in connection with representation of the Client. This is an essential and vital agreement to the Firm's agreeing to provide services rendered.**"

8.     The Debtor/Defendant has breached his contractual obligations owed to Counsel under the Fee Agreement by deliberately disregarding his written obligations thereunder.

9.     As a condition precedent to Counsel's representation of the Debtor/Defendant and Counsel's filing a Notice of Appearance in the Adversary Proceeding on the Debtor/Defendant's behalf ("Adversary Appearance"), the Debtor/Defendant agreed to pay Counsel an additional retainer before Counsel filed its Adversary Appearance (the "Retainer"). The Debtor/Defendant did not pay the Retainer in advance, however, he did agree to pay the Retainer immediately ("Debtor's Assurance") after Counsel filed the Adversary Appearance and the Debtor/Defendant's Answer in the Adversary Proceeding (the "Answer").

10.     On August 9, 2004, in reliance on Debtor's Assurance, Counsel filed the Adversary

Appearance and, simultaneously therewith, filed the Answer.

11.     Counsel filed its Adversary Appearance and the Answer in reliance on the Fee Agreement executed by Debtor/Defendant, Debtor/Defendant's oral agreement to pay Counsel an additional Retainer and to protect the interests of the Debtor/Defendant in the Adversary Proceeding.

12.     Between July 7, 2004 and December 29, 2004, Counsel made numerous telephone calls to Debtor/Defendant, left numerous detailed voice mails for the Debtor/Defendant, had multiple telephone and personal conferences with Debtor/Defendant, sent multiple letters to Debtor/Defendant and e-mailed numerous correspondence to Debtor/Defendant.    All such correspondence notified the Debtor/Defendant of his obligation to pay his fees and the Retainer to Counsel, attempting to make arrangements to fulfill these obligations and as early as two months prior to Counsel filing its Motion to Withdraw, provided the Debtor/Defendant with warnings that Counsel would withdraw its appearance should Debtor/Defendant fail and/or refuse to pay the Retainer and the balance of the fees due Counsel.

13.     During this approximately six-month time frame from July through December, 2004, Counsel engaged in approximately twenty-two (22) communications with and/or directed to the Debtor/Defendant regarding the non-payment of fees and Retainer and relaying to him in November and December, 2004, the agreement that non-payment of the same would result in Counsel's withdrawing its appearance and terminating representation of Debtor/Defendant.

14.     For a two month period from August through September, 2004, Debtor/Defendant failed to respond or communicate with Counsel regarding his obligation to pay fees and fund the Retainer, Counsel's communications regarding its representation in the Adversary Proceeding, and also with regard to other material and relevant matters in Debtor/Defendant's case under Chapter 7.

15.     Counsel was advised by the Debtor/Defendant that he did not have the resources to

honor Debtor's Assurances, Debtor/Defendant's financial commitments under the Fee Agreement to Counsel and, moreover, that he had no prospects to be able to do so.

16.     At the non-evidentiary hearing before the Bankruptcy Court on January 26, 2005, Counsel brought to the court's attention that Debtor/Defendant failed to satisfy his financial and other obligations to Counsel, in that he has failed and/or refused to pay the outstanding fee balance and the Retainer due Counsel under the Fee Agreement and under the assurances.

17.     The Bank filed the Adversary Proceeding on June 25, 2004. The plaintiff in the Adversary Proceeding, Danvers Savings Bank ("Bank") did nothing to prosecute or advance its case until December 28, 2004 when it filed a Motion to Examine Debtor Pursuant to Rule 2004(a) which was "Denied" by the Court (the "Motion to Examine"). On April 6, 2005, the Bank commenced its deposition of the Debtor/Defendant, which was suspended and is scheduled to continue on April 26, 2005. There are no pending motions before the Bankruptcy Court and the case has not been scheduled for any case conferences or a pre-trial conference. The case does not appear on a trial list at this time.

18.     In essence, other than the initial filings of the Adversary Complaint and the Answer, and the Bank's deposition of Debtor/Defendant, the Adversary Proceeding is in its infancy. Debtor/Defendant will have sufficient time to retain and engage the services of new counsel. Counsel will cooperate fully with any successor counsel.

19.     As of March 19, 2005, Debtor/Defendant has an outstanding balance due Counsel. The retainer was requested by Counsel at least eight (8) months ago and remains unpaid other than a nominal payment of $2,836.09. Also, as of March 19, 2005, the balance due Counsel for services rendered and costs incurred in the Adversary Proceeding was $1,459.10.

20.     As of March 19, 2005, Counsel has received payment from the Debtor/Defendant for

services rendered and costs incurred in the Chapter 7 matter in the amount of $12,811.91, from April 28, 2004 through March 19, 2005 for 55 hours. The balance due for the Chapter 7 case is $2,659.51.

21.    As of March 19, 2005, Counsel has received payment from the Debtor/Defendant for services rendered and costs incurred in the Adversary Proceeding in the amount of $2,836.09, from June, 2004 through March 19, 2005, for 17.86 hours. The balance due for the Adversary Proceeding is $1,458.10.

22.    Counsel projects that at its current hourly rates, the fees and costs Debtor/Defendant would incur to defend the Adversary Proceeding would be at a minimum $35,000.00 and likely closer to $50,000.00, based on the following:

- It is projected that given the nature of the claims alleged in the Adversary Complaint, that Counsel may take six (6) to ten (10) depositions at a cost of about $2,000.00 each.

- The out-of-pocket costs for a deposition and transcript are a minimum of $1,200.00 for each day of deposition.

- Counsel expects a four (4) to five (5) day trial. The costs alone, without reflecting fees for Counsel's services, are projected in excess of $10,000.00.

23.    Counsel is a small, five (5) attorney firm.

24.    Debtor did not object to the Motion to Withdraw.

## STATEMENT OF QUESTIONS AND RELIEF SOUGHT

25.    The sole question involved on the appeal is whether the Bankruptcy Court abused its discretion in denying Counsel's Motion to Withdraw Appearance.

26.    Counsel respectfully requests that this Court enter an Order:

(a)    Granting Counsel leave to file its Appeal of the denial of Counsel's Motion

to Withdraw Appearance, and;

    (b)    Upon such appeal, that this Court enter an Order reversing the Bankruptcy
Court's Order as an abuse of the court's discretion; and

    (c)    Granting such other and further relief as is just.

## STATEMENT OF REASON RELIEF SHOULD BE GRANTED

27.    The Bankruptcy Court's Order denied Counsel's Motion to withdraw its appearance
and, therefore requires Counsel to continue representing Debtor/Defendant in this action. As a
result, if Counsel is not granted leave to file an appeal of the Order, Counsel's appeal will become
moot and Counsel will be left without remedy and will suffer irreparable injury. An attorney's
continued representation of a client throughout the trial without filing an interlocutory appeal of the
denial of will effectively moot "any relief from the erroneous order denying his motion to withdraw."
Rivera-Domenech, 2005 WL 708305.

28.    "[A]n order compelling a lawyer to work without prospect of compensation is
unrelated to the merits of the dispute, cannot be rectified at the end of the case, and has a potential
to cause significant hardship." Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins.
Co., 310 F.3d 537, 539 (7th Cir. 2002). As a result, such an order is immediately appealable as a
collateral order. *Id.*

29.    The prosecution of the action by the Plaintiff will not be disrupted by granting
Counsel leave to file Counsel's appeal. There are no motions pending, no pre-trial or case
management conference dates assigned and no trial date has been assigned. There has been little
discovery done, to date, with the only exception being the deposition of the Debtor/Defendant was
commenced by the Bank on April 6, 2005.

30.    Requiring Counsel to continue to represent the client after denial of its Motion to

Withdraw at this time would have the effect of making the Court's Order "effectively unreviewable" and forcing Counsel to represent a client against his will is irreparable. Whiting v. Lacara, 187 F.3d 317, 320 (2d Cir. 1999). "An order requiring an attorney to continue representing a client in a civil action without compensation may subject the attorney to irreparable harm and amount to an order of specific performance." Lieberman v. Polytop Corp., 2001 WL 196759 (1st Cir. 2001) (unpublished decision).

31.    Counsel has a strong likelihood of success on the merits on its appeal. While a motion to withdraw representation "is a matter addressed to the discretion of the trial court and will be reversed on appeal only when the trial court has abused its discretion," the denial of such a motion may be revered on appeal where the withdrawal is consistent with the Rules of Professional Conduct in effect and where the attorney faces substantial additional financial exposure and potential civil liability to the client if the attorney were not allowed to withdraw. Rivera-Domenech, 2005 WL 708305; Lieberman, 2001 WL 196759; see also Barton v. Dist. of Columbia, 209 F.R.D. 274, 278 (D. D.C. 2002).

32.    In circumstances similar to the case at bar, the United States Court of Appeals for the First Circuit in two instances has "found the denial of a motion to withdraw to be an abuse of discretion" and refused to place the attorney in a position in which he would have "to front the necessary expenses, without any real assurance that he will be paid for any of it, especially where he already is owed a substantial sum and the client has violated the written fee agreement . . . [and] could expose himself to civil liability to his client." Rivera-Domenech, 2005 WL 708305; Lieberman, 2001 WL 196759.

33.    In Rivera-Domenech and Lieberman, the First Circuit determined that the lower court abused its discretion in refusing to allow the attorney to withdraw as it would expect "too much of

counsel to expend the additional energy necessary to go to trial, and to front the necessary expenses without any real assurance that he will be paid for any of it." Rivera-Domenech, 2005 WL 708305 (*quoting* Lieberman, 2001 WL 196759).

34.     Unlike the situations in Rivera-Domenech and Lieberman, where the cases were "nearly ready for trial," the prosecution of the Adversary Proceeding is in its infancy. Counsel will be faced with the "substantial additional financial exposure" not only trial itself, but for all pre-trial matters, including further discovery.

35.     Further, as was the case in Lieberman, the standards of conduct of attorneys practicing before this Court are governed by a professional conduct rule that states that an attorney may withdraw the client "fails substantially to fulfil an obligation to the attorney." *See* Mass. R. Prof. C. 1.16. In Lieberman, the First Circuit determined that the client had failed to substantially fulfil an obligation to the attorney by failing to pay overdue legal fees despite numerous warnings that failure to pay would result in withdrawal, needing to be repeatedly reminded to replenish the retainer, and where the client had no reasonable prospect of being able to pay for the legal services. Lieberman, 2001 WL 196759; *see also* Fidelity Nat'l Title Ins. Co., 310 F.3d at 540-41 (determining lower court abused discretion in denying counsel's motion to withdraw where a small firm had been unpaid for legal fees, would be burdened by prospect of further uncompensated outlays, had provided reasonable notice to the client of the failure to pay and right to withdraw and where motion to withdraw was brought during a quiet period in the litigation). Under these circumstances, the First Circuit determined that withdrawal was consistent with Rules of Professional Conduct. Lieberman, 2001 WL 196759.

6.     Counsel's Motion for Stay Pending Appeal is not contrary to public policy. Counsel's Motion to Withdraw is consistent with the Massachusetts Rules of Professional Conduct allowing

an attorney to withdraw from representation of a client where the client has failed substantially to

meet his obligations to the attorney. Mass. R. Prof. C. 1.16. Further, the Debtor/Defendant is in

breach of his contract and his obligations of good faith with Counsel. *See* Hammond v. T.J. Litle

& Co., Inc., 809 F. Supp. 156, 163 (D.Mass. 1992) ("a client, when engaging counsel, assumes an

obligation of good faith and must act with due regard for an attorney's right to be compensated for

work done on a client's behalf.").

WHEREFORE, Counsel respectfully requests that this Court grant its Motion for Leave to

Appeal the Interlocutory Order of the Bankruptcy Court denying Counsel's Motion to Withdraw

Appearance.

Respectfully submitted,
Finneran & Nicholson, P.C.

Dated: April 8, 2005

Donald H. Adler, Esq. (BBO# 012620)
Of Counsel
Thomas G. Nicholson, Esq. (BBO# 548472)
Finneran & Nicholson, P.C.
44 Merrimac Street
Newburyport, MA 01950
Telephone: (978)462-1514
E-mail: bankruptcy@finnic.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In Re: | ) | |
| Lawrence E. Cuddy, Jr. and | ) | Chapter 7 |
| Betsy J. Graf Cuddy, | ) | |
| Debtors | ) | Case No. 04-12166-WCH |
|  | ) | |
|  | ) | |
| Danvers Savings Bank, | ) | |
| Plaintiff | ) | Adversary Proceeding |
|  | ) | |
| vs. | ) | Case No. 04-1208 |
|  | ) | |
| Lawrence E. Cuddy, Jr., | ) | |
| Defendant | ) | |
|  | ) | |

## CERTIFICATE OF SERVICE

I, Donald H. Adler, Of Counsel, hereby certify that on April 8, 2005, I caused a copy of the

Motion to District Court for Leave to File Appeal, to be served on the parties set forth on the

following Service List at the addresses indicated thereon by electronic filing notification, unless

otherwise indicated.

Dated: April 8, 2005

Donald H. Adler, Esq. (BBO# 012620)
Of Counsel
Finneran & Nicholson, P.C.
44 Merrimac Street
Newburyport, MA 01950
Telephone: (978)462-1514
E-mail: bankruptcy@finnic.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
|     Lawrence E. Cuddy, Jr. and | ) | Chapter 7 |
|     Betsy J. Graf Cuddy, | ) | |
|         Debtors | ) | Case No. 04-12166-WCH |
| | ) | |
| | ) | |
|     Danvers Savings Bank, | ) | |
|         Plaintiff | ) | Adversary Proceeding |
| | ) | |
|     vs. | ) | Case No. 04-1208 |
| | ) | |
|     Lawrence E. Cuddy, Jr., | ) | |
|         Defendant | ) | |
| | ) | |

## SERVICE LIST

John Aquino, Esq.
Chapter 7 Trustee
Anderson & Aquino, LLP
260 Franklin Street
Boston, MA 02110

Gary L. Donahue, Esq.
Office of the U.S. Trustee
10 Causeway Street
O'Neill Federal Building
Boston, MA 02222

William R. Moorman, Jr. Esq.
Brendan C. Recupero, Esq.
Craig and Macauley
Professional Corporation
600 Atlantic Avenue
Boston, MA 02210
(Counsel to Betsy G. Cuddy)

Lawrence E. Cuddy, Jr.
48 Green Street
Newbury, MA 01951
(Debtor/Defendant)

Betsy G. Cuddy
36 Rolfes Lane
Newbury, MA 01951
(Co-Debtor)

Astrid Daly, Esq.
40 Reservoir Drive
Weare, NH 03281
(Counsel to Danvers Savings Bank)

Danvers Savings Bank
Attn: Alan Bryne, Vice President
One Conant Street
Danvers, MA 01923

Robert L. Marder, Esq.
85 Exchange Street, Suite L10
Lynn, MA 01901
(Counsel to Danvers Savings Bank)

Westlaw.

# **ADDENDUM A**

2 Fed.Appx. 37
2 Fed.Appx. 37, 2001 WL 196759 (1st Cir.(R.I.))
**(Cite as: 2 Fed.Appx. 37, 2001 WL 196759 (1st Cir.(R.I.)))**

Page 1

## C

### **Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

NOT FOR PUBLICATION NOT TO BE CITED AS PRECEDENT

Please use FIND to look at the applicable circuit court rule before citing this opinion. First Circuit Rule 36(b). (FIND CTA1 Rule 36.)

United States Court of Appeals,
First Circuit.
George E. LIEBERMAN, Movant, Appellant,
INDUSTRIAL DISTRIBUTION CORPORATION,
Plaintiff, Appellee,
v.
POLYTOP CORPORATION; Gerhard Hutter;
Woodrow Wilson; Robert Harding,
Defendants.
George E. LIEBERMAN, Movant, Appellant,
INDUSTRIAL DISTRIBUTION CORPORATION,
Plaintiff, Appellee,
v.
POLYTOP CORPORATION; Gerhard Hutter,
Defendants, Appellees,
Woodrow Wilson; Robert Harding, Defendants.
**Nos. 00-1766, 00-1827.**

Feb. 21, 2001.

Attorney brought motion to withdraw from representation of his clients in civil action for failure to pay over $80,000 in legal fees. The United States District Court for the District of Rhode Island, Ernest C. Torres, J., denied motion. Attorney appealed. The Court of Appeals held that: (1) district court's interlocutory order denying motion to withdraw was reviewable, and (2) attorney was entitled to withdraw from representation.

Reversed and remanded.

West Headnotes

**[1] Federal Courts** ⟸⟹572.1
170Bk572.1 Most Cited Cases

Order which does not terminate action by disposing of all rights of parties nevertheless is reviewable on appeal if: (1) order conclusively resolves important question (2) which is entirely separate from merits and (3) if matter will evade adequate review on appeal.

**[2] Federal Courts** ⟸⟹576.1
170Bk576.1 Most Cited Cases

District court's order denying attorney's motion to withdraw, which had result of requiring attorney to continue representing client in civil action without compensation, although interlocutory, was reviewable; order conclusively resolved important question entirely separate from merits, matter would evade adequate review on appeal, and order could subject attorney to irreparable harm and amounted to order of specific performance.

**[3] Attorney and Client** ⟸⟹76(1)
45k76(1) Most Cited Cases

**[3] Federal Courts** ⟸⟹813
170Bk813 Most Cited Cases

Grant or denial of attorney's motion to withdraw in civil case is matter addressed to discretion of trial court and will be reversed on appeal only when trial court has abused its discretion.

**[4] Attorney and Client** ⟸⟹76(1)
45k76(1) Most Cited Cases

Attorney could withdraw from representation in civil case based on clients' failure to pay over $80,000 in fees, in derogation of written fee agreement, where clients were given sufficient warning that failure to pay would result in attorney's withdrawal from case, clients' private attorney revealed that clients had no reasonable prospect of being able to pay him unless litigation was successful, attorney faced significant financial exposure by being required to go forward, and it was still relatively early stage of litigation. U.S.Dist.Ct.Rules D.R.I., Local Rule 4(d);   R.I. Sup.Ct.Rules, Art. V, Rules of Prof.Conduct, Rule 1.17(b)(4-6).

**\*38** Appeals from the United States District Court for the District of Rhode Island;   Ernest C. Torres, U.S. District Judge.

George E. Lieberman and Tillinghast, Licht, Perkins, Smith & Cohen, on brief, for appellant.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2 Fed.Appx. 37
2 Fed.Appx. 37, 2001 WL 196759 (1st Cir.(R.I.))
**(Cite as: 2 Fed.Appx. 37, 2001 WL 196759 (1st Cir.(R.I.)))**

Gerhard P. Hutter, on brief, pro se.

Before TORRUELLA, Chief Judge, LEVIN H. CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.

PER CURIAM.

**\*\*1** The court has determined that oral argument may be dispensed with in this case. *See* Fed.R.App.P. 34(a)(2)(C); 1st Cir.Loc.R. 34(b). After a thorough review of the record and of the parties' submissions, we find that we do have jurisdiction over this interlocutory appeal, and we reverse the lower court's decision denying appellant George E. Lieberman's ("Lieberman's") motion to withdraw from his representation of his clients, Industrial Distribution Corporation ("IDC") and Gerhard Hutter ("Hutter").

[1][2] This is an appropriate interlocutory appeal under the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). An order which does not terminate an action by disposing of all rights of the parties nevertheless is reviewable if: 1) the order conclusively resolves an important question 2) which is entirely separate from the merits and 3) if the matter will evade adequate review on appeal. *Id.*; *United States v. Quintana-Aguayo*, 235 F.3d 682, 684 (1st Cir.2000). It is clear that the order below conclusively resolved an important question entirely separate from the merits: the question of whether appellee's attorney should be allowed to withdraw. Furthermore, we find that the matter will evade adequate review on appeal. An order requiring an attorney to continue representing a client in a civil action without compensation may subject the attorney to **\*39** irreparable harm and amounts to an order of specific performance. *See Whiting v. Lacara*, 187 F.3d 317 (2d Cir.1999). We may proceed to the merits.

[3] "The grant or denial of an attorney's motion to withdraw in a civil case is a matter addressed to the discretion of the trial court and will be reversed on appeal only when the trial court has abused its discretion." *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 135 (1st Cir.1985) (quoting *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087 (7th Cir.1982)). We conclude that in this instance, the lower court did abuse its discretion.

Rhode Island District Court Local Rule 4(d) provides that "[t]he Rules of Professional Conduct of

the Rhode Island Supreme Court shall be the standard of conduct for all attorneys practicing before this court," and the supreme court rules in turn provide the grounds upon which an attorney may seek leave to withdraw. Those rules in part provide that an attorney may withdraw if:

(4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(6) other good cause for withdrawal exists.

R.I. S.Ct. R. 1.17(b)(4)-(6). These factors provide grounds for withdrawal even where withdrawal cannot be accomplished "without material adverse effect on the interests of the client." *See* R .I. S.Ct. R. 1.17(b) ("[A] lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, *or* if ... (4) the client fails substantially ....") (emphasis added).

**\*\*2** [4] Clearly Hutter has "fail[ed] substantially to fulfill an obligation to [Lieberman] regarding the lawyer's services," R.I. S.Ct. R. 1.17(b)(4), because he has failed to pay Lieberman over $80,000 in fees owed to him, in derogation of their written fee agreement. Before moving to withdraw, Lieberman also gave him sufficient warning that a failure to bring his account up to date would result in his withdrawal from the case. Though only three weeks passed between the time the first bill became past due and the time Lieberman moved to withdraw, three additional weeks passed before the district court heard and denied the motion. In that interim, Hutter's private attorney revealed that Hutter had no money to pay Lieberman, and Hutter indicated he had no reasonable prospect of being able to pay him unless the litigation was successful. Also, in previous months Lieberman repeatedly had to remind Hutter to bring the retainer back up to its required balance, so Lieberman's quick action once the first payment became past due seems reasonable.

Thus, withdrawal under the circumstances certainly would have been consistent with the Local Rules. Further, Lieberman faces substantial additional financial exposure should he be required to go forward. Several pretrial matters have yet to be resolved, and the trial itself will last more than a week. Counsel already has expenses that have not been reimbursed, and there may well be additional

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2 Fed.Appx. 37                                                                  Page 3
2 Fed.Appx. 37, 2001 WL 196759 (1st Cir.(R.I.))
**(Cite as: 2 Fed.Appx. 37, 2001 WL 196759 (1st Cir.(R.I.)))**

substantial expenses that will need to be incurred at trial.    It simply expects too much of counsel to expend the additional energy necessary to go to trial, and to front the necessary expenses, without any real assurance that he will be paid for any of it, especially *40 where he already is owed a substantial sum and the client has violated the written fee agreement. Further, if counsel does not expend the necessary effort and does not front the trial expenses, he very well could expose himself to civil liability to his client.   We refuse to place counsel in such a position. Under these circumstances, the lower court abused its discretion in refusing to let Lieberman withdraw.

Furthermore, Hutter was less than forthcoming with Lieberman when he signed the fee agreement. Apparently Hutter knew from the beginning that he would be unable to pay his legal fees if he were not successful in the litigation.   It appears that he and his wife expected that as a practical matter, Lieberman's representation of them at some point would evolve into a contingency arrangement, whereby Lieberman was to be paid (if at all) out of the proceeds of the litigation.   But that was not the arrangement to which Lieberman agreed.      Under these circumstances, fairness dictates that Hutter, not Lieberman, suffer the consequences of his own failure to honor his agreement.

Further, we do not think the decision here should hinge entirely on the assertion that the case was nearly ready for trial.    Despite the court's apparent attempts to move this case to trial quickly, that goal does not seem to have been realistic.   At least one discovery dispute was outstanding;  that dispute had been referred to a magistrate judge, who had not set the matter for hearing until approximately two weeks *after* the trial judge had planned to try the case.   A partial summary judgment motion was not fully briefed until approximately two weeks before the trial date, and that, too, had been referred to the magistrate judge.    Moreover, the opposing party apparently is not pushing to get the matter to trial, as it agreed to a stay of all proceedings pending this appeal.   Though certainly a district court should consider the stage of the litigation when deciding an attorney's motion to withdraw, here we find that the timing issues should not have been determinative.

**\*\*3** *Appellant's motion to strike is denied. Appellee's motion to file reply brief is allowed.  The decision of the lower court is reversed, and the case is remanded for further proceedings consistent with this order.*

2 Fed.Appx. 37, 2001 WL 196759 (1st Cir.(R.I.))

**Briefs and Other Related Documents (Back to top)**

*        00-1827_____(Docket)
(Jun. 29, 2000)

*        00-1766_____(Docket)
(Jun. 22, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

2005 WL 708305
--- F.3d ---
**(Cite as: 2005 WL 708305 (1st Cir.(Puerto Rico)))**

# **H**
Only the Westlaw citation is currently available.

United States Court of Appeals,
First Circuit.
Angel L. RIVERA-DOMENECH, Plaintiff,
Appellee,
v.
CALVESBERT LAW OFFICES PSC, Intervening
Defendant, Appellant.
**No. 03-1471.**

Submitted Aug. 5, 2004.
Decided March 29, 2005.

**Background:** In proceedings stemming from attorney's representation of client in underlying admiralty claim, attorney appealed from order of the United States District Court for the District of Puerto Rico, Justo Arenas, United States Magistrate Judge, dismissing attorney's intervening claim for payment of fees and ordering parties to undergo arbitration.

**Holding:** The Court of Appeals held that arbitration of fee dispute between attorney and client was required.
Appeal dismissed.

**[1] Federal Courts** ☜0

170Bk0 k.
Attorney's claim that district court abused its discretion in denying his motion to withdraw his appearance as counsel for client in admiralty case, based on client's failure to pay attorneys' fees, was moot, where attorney did not file interlocutory appeal from the denial of motion to withdraw and represented the client through the trial on the admiralty case.

**[2] Attorney and Client** ☜0
45k0 k.
Arbitration of fee dispute between attorney and client was required, where attorney had agreed in his original fee agreement to have an arbitrator decide fee disputes, not the court, and the attorney drafted the original fee agreement referring all disputes to arbitration.

Appeal from the United States District Court for the District of Puerto Rico, Justo Arenas, U.S. Magistrate

## **ADDENDUM B**

Page 1

Judge.

Paul E. Calvesbert, Enrique A. Báez, and Calvesbert Law Offices PSC on brief for appellant.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and LYNCH, Circuit Judge.

PER CURIAM.

**\*1** This case involves the efforts by an attorney to convince a federal court to permit him to withdraw his appearance or at least require that his client pay him for his work in a trial. Attorney Paul E. Calvesbert (or more accurately, his professional services corporation) represented Rivera-Domenech in an admiralty case in federal court between Angel L. Rivera-Domenech and Quality Boat Services (and other defendants).

**I.**
We describe the facts as alleged by attorney Calvesbert. In January 1998, Rivera-Domenech retained Calvesbert to represent him in the underlying admiralty action (for simplicity, we refer to the law firm and the lawyer collectively with the lawyer's name). In late February 1998, Calvesbert sent Rivera-Domenech a fee agreement, which Rivera-Domenech executed on March 2, 1998. In April of 1998, Calvesbert filed a federal complaint for Rivera-Domenech against Quality Boat Services and other defendants, and then proceeded to pursue the admiralty action. By October of 2000, the lawyer and the client were in the middle of a fee argument. According to Calvesbert, Rivera-Domenech by then owed him more than $10,000.

The bench trial before a magistrate judge started on October 16, 2001; the trial was then continued on October 17 until November 7, 2001. A further series of reschedulings followed and trial was ultimately set for April 23, 2002.

On March 26, 2002, Calvesbert attempted to resolve the fee amount owed, now around $60,000, by proposing in a letter that Rivera-Domenech convert the representation agreement into a contingency fee arrangement. Calvesbert gave a deadline of April 1 to respond or Calvesbert would file a motion to withdraw his appearance in the case. On April 8, Rivera-Domenech responded. In his response,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Rivera-Domenech attacked the integrity of his lawyer; no resolution was reached on the fees.

Calvesbert then moved to withdraw from representation for lack of payment and irreconcilable differences on April 10, 2002, and sought continuance of the April 23 trial date. Calvesbert did not then ask in the alternative for the court to order the payment of fees. On April 12, 2002, the magistrate judge denied the motion to withdraw, without hearing, commenting only that "[t]he trial will not be continued."

Calvesbert, on April 15, 2002, moved the court to reconsider the denial of his motion to withdraw on the ground of irreconcilable differences and argued that his fee agreement permitted him to withdraw. A copy of the fee agreement was attached and contained an arbitration provision:

Any controversy, claim or dispute in the course and scope of the lawyer-client relationship or arising out of or relating to this Proposal or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate (hereinafter the "Dispute"), shall be determined by arbitration in San Juan, Puerto Rico, before a sole arbitrator, in accordance with the laws and rules of professional conduct of the Commonwealth of Puerto Rico. "Disputes" shall include, without limitation, those involving fees, costs, billing, claims of professional negligence, malpractice and breach of ethical or fiduciary duties. The arbitration shall be administered by the American Arbitration Association (AAA) pursuant to its Commercial Arbitration Rules and Supplementary Procedures for Large, Complex Disputes. The arbitrator shall be a licensed attorney in Puerto Rico and a member of the AAA Panel of Arbitrators.

*2 This motion was also denied "[n]otwithstanding the deterioration of the relationship between counsel and client." Calvesbert then filed an "Urgent Appeal From Magistrate Judge's Orders" pursuant to 28 U.S.C. § 636(b)(1)(A) and the Local Rules of the District of Puerto Rico. This "appeal" was an appeal to the district court from the order by the magistrate judge, but it was denied by the magistrate judge. [FN1] Calvesbert did not seek to file an interlocutory appeal to this court from the denial of the motion to withdraw. The result was that Calvesbert was effectively required to continue to represent Rivera-Domenech, a hostile client, at trial without payment at the time. Bench trial before the magistrate judge was held on April 23, 25, and May 13, and the court,

on its own motion, set further bench trial for six days in September 2002, starting with September 3.

Trying another tack, Calvesbert sought an order that he be paid reasonable fees because he was being forced to continue to represent Rivera-Domenech by the court. Calvesbert moved to intervene as a third-party plaintiff on June 17, 2002, against Rivera-Domenech, to assert his attorney's fees claim. Rivera-Domenech did not object. The magistrate judge allowed Calvesbert permissive intervention on June 20, 2002. On August 5, 2002, Calvesbert filed his first motion requesting an order from the court that his client pay him the sums claimed--$82,641.94--as a corollary of the order denying his motion to withdraw. This was before trial recommenced in September. The court on August 27, 2002, denied that motion without comment.

After the bench trial ended on September 13, 2002, the court granted Calvesbert and Rivera-Domenech 20 days to meet and settle their fee differences, and if they failed, to let the court know so that a trial date for the intervenor claim for payment of fees could be set. It is unclear what amount in fees Calvesbert thought Rivera-Domenech owed at that point.

On October 23, 2002, Rivera-Domenech filed a pro se motion alerting the court to the arbitration clause in the original fee agreement. The court treated the motion as a motion for an order compelling arbitration of the fee dispute, ordered the parties to undergo arbitration, and dismissed Calvesbert's intervening claim for payment of fees without prejudice on December 30, 2002.

II.

Calvesbert was ultimately unsuccessful in the attempt below to obtain the desired relief from the district court: payment of fees both from before and after the denial of the motion to withdraw his appearance. Calvesbert presents four arguments on appeal: 1) the district court erred by not allowing him to withdraw before commencement of or during trial; 2) the district court should have held a hearing on his motion to withdraw; 3) the district court should have conditioned Calvesbert's continued representation of Rivera-Domenech upon posting of adequate security by Rivera-Domenech to cover reasonable attorney's fees; and 4) the district court should not have sent the attorney's fee dispute to arbitration. The client, Rivera-Domenech, has not filed a reply on appeal.

*3 [1] We make a point clear at the start. At the time of the entry of the denial of the motion to withdraw,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

there was interlocutory jurisdiction to take an appeal to this court. *See Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.,* 310 F.3d 537, 539 (7th Cir.2002); *Whiting v. Lacara,* 187 F.3d 317, 319-20 (2d Cir.1999). Calvesbert should have pursued the interlocutory appeal at the time of the denial of his motion to withdraw his appearance. [FN2] In similar circumstances, circuit courts, including this one, have found the denial of a motion to withdraw to be an abuse of discretion. *See, e.g., Fidelity,* 310 F.3d at 540-41; *Lieberman v. Polytop Corp.,* 2 Fed. Appx. 37, 39-40 (1st Cir.2001) (unpublished opinion). In *Lieberman,* we reversed the district court's denial of a motion to withdraw and explained:

> It simply expects too much of counsel to expend the additional energy necessary to go to trial, and to front the necessary expenses, without any real assurance that he will be paid for any of it, especially where he already is owed a substantial sum and the client has violated the written fee agreement. Further, if counsel does not expend the necessary effort and does not front the trial expenses, he very well could expose himself to civil liability to his client. We refuse to place counsel in such a position.

2 Fed. Appx. at 39-40. Here, in addition, it is plain there was an irretrievable breakdown between client and counsel, yet the court refused to allow Calvesbert to withdraw.

By not taking an interlocutory appeal, Calvesbert has effectively mooted any relief from the erroneous order denying his motion to withdraw. He has now represented the client through the trial. His claim that the district court should have held a hearing on the motion to withdraw is similarly moot.

Moreover, as for Calvesbert's claim that the district court should have conditioned his continued representation of Rivera-Domenech upon the client's posting of adequate security, he has waived the argument by not asking for such relief from the district court in the proceedings below. *See McCoy v. Mass. Inst. of Tech.,* 950 F.2d 13, 22 (1st Cir.1991).

[2] That leaves Calvesbert's appeal from the order compelling arbitration and dismissing his claim for fees without prejudice. The only relief Calvesbert wants at this point is that the court, not the arbitrator, decide the fee issue. Whether the district court had ancillary jurisdiction to issue such an order is a nice question. Two members of this panel conclude it did; one concludes it did not. But we make no holding on the point.

Courts have rested the exercise of jurisdiction over fee disputes related to proceedings before them on the doctrine of ancillary jurisdiction. [FN3] *See, e.g., Pay Tel. of Greater N.Y., Inc. v. Sheridan,* 766 F.2d 92, 94 (2d Cir.1985) (explaining that "in setting fees [due a withdrawing attorney] the district court is exercising ancillary jurisdiction"); *Jenkins v. Weinshienk,* 670 F.2d 915, 918 (10th Cir.1982) (considering "the scope of a federal trial court's ancillary jurisdiction to adjudicate fee disputes").

*4 A court's power to protect a lawyer against unfairness by his client in the context of a motion to withdraw seems to be an inherent power necessary to effectuate orderly judicial proceedings. *See, e.g., Fed. Sav. & Loan Ins. Corp. v. Ferrante,* 364 F.3d 1037, 1041 (9th Cir.2004) (surveying cases in which courts had jurisdiction to resolve "attorney fee disputes collateral to the underlying litigation").

But there are disagreements about the scope of that jurisdiction. In *Broughten v. Voss,* 634 F.2d 880 (5th Cir.1981), the court held that the district court had no ancillary jurisdiction, sua sponte, to make resolution of a fee dispute between a law firm and its client a condition precedent for granting the law firm's motion to withdraw. *Id.* at 881-83. As the outcome in *Broughten* illustrates, whether ancillary jurisdiction exists over this particular dispute is a question over which reasonable minds may disagree. However, the particular facts of this case make it unnecessary to resolve this question definitively.

Regardless of the jurisdictional issue, the resolution that Calvesbert must go through arbitration is correct. Calvesbert wanted the district court to resolve the fee dispute in his favor, but "the strong federal policy favoring arbitration agreements ... requires us to resolve any doubts concerning arbitrability in favor of arbitration," *Commercial Union Ins. Co. v. Gilbane Bldg. Co.,* 992 F.2d 386, 388 (1st Cir.1993) (internal quotation marks omitted). Calvesbert had agreed in his original fee agreement to have an arbitrator decide the fee dispute, not the court. There is no unfairness: Calvesbert drafted the original fee agreement referring all disputes to arbitration. Nor did Rivera-Domenech waive his rights to demand arbitration.

We ***dismiss*** Calvesbert's appeal for lack of merit. No costs are awarded.

> FN1. We do not understand why this appeal was not ruled upon by the federal district

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

judge, who was the proper decision maker for the appeal. *See* 28 U.S.C. § 636(b)(1)(A) ("A [district] judge of the court may reconsider any pretrial matter [decided by the magistrate] ... where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). The motion also referred to what was then Rule 510 of the Local Rules of the District of Puerto Rico, which stated, "The [district] Judge to whom the case is assigned shall consider the appeal and shall set aside any portion of the Magistrate Judge Order found to be clearly erroneous or contrary to law." D.P.R.R. 510. In any event, this procedural problem was not raised on appeal before this court.

FN2. We do not suggest that Calvesbert waived his right to a final appeal by failing to file an interlocutory appeal, only that he has limited the relief available. The general rule is that failure to take an interlocutory appeal does not automatically foreclose review after final judgment. *See* 16 C. Wright et al., *Federal Practice and Procedure* § 3921, at 19 (2d ed. 1996) ("[F]ailure to take an available [interlocutory] appeal does not of itself waive the right to secure review, on appeal from final judgment, of matters that could have been appealed but were not.").

FN3. The Supreme Court has explained ancillary jurisdiction as a way "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *see also* 13B C. Wright et al., *Federal Practice and Procedure* § 3567.3, at 96 (Supp.2004).

2005 WL 708305 (1st Cir.(Puerto Rico))

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**UNITED STATES BANKRUPTCY COURT, DISTRICT OF MASSACHUSETTS**

Proceeding Memorandum/Order of Court

**In re:** Danvers Savings Bank v. Cuddy                           **Case#:** 04-01208    **Ch:**

**MOVANT/APPLICATNT/PARTIES:**

#17 Motion to Withdraw as Counsel to Defendant

**OUTCOME:**

☐ By Agreement of the Parties

_____Granted_____Approved_____Sustained
__✔__Denied_____Denied **without prejudice**_____Withdrawn in open court_____Overrulled
_____OSC enforced/released

_____Continued to:_____For:_____

_____Formal order/stipulation to be submitted by:_____Date due:_____
_____Findings and conclusions dictated at close of hearing incorporated by reference.

_____Taken under advisement:  Brief(s) due_____From_____
                            Response(s) due_____From_____
_____Fees allowed in the amount of:_$_____Expenses of:_$_____

_____No appearance/response by:_____

__✔__DECISION SET OUT MORE FULLY BY COURT AS FOLLOWS:

In accordance with the Decision on Motion to Withdraw as Counsel to Defendant of even date,
the Motion is DENIED.
_____
_____
_____
_____
_____
_____
_____

IT IS SO NOTED:                          IT IS SO ORDERED:

                                         *William Hillman*

_____                                    Dated: 03/24/2005
Courtroom Deputy                         William C. Hillman, U.S. Bankruptcy Judge

**BAE SYSTEMS**

Enterprise Systems Incorporated
11487 Sunset Hills Road
Reston, Virginia 20190-5234

# CERTIFICATE OF SERVICE

District/off: 0101-1          User: js                    Page 1 of 1              Date Rcvd: Mar 29, 2005
Case: 04-01208               Form ID: pdf012             Total Served: 4

The following entities were served by first class mail on Mar 31, 2005.
aty       +Donald H. Adler,    Finneran & Nicholson, P.C.,   44 Merrimac Street,    Newburyport, MA 01950-2574
aty       +Gary L. Donahue,    U.S. Dept. of Justice,   Office Of U.S. Trustee,    10 Causeway Street,
           Boston, MA 02222-1043
aty       +Robert L. Marder,    Robert L. Marder, Esq.,   85 Exchange St.,   Suite L10,   Lynn, MA 01901-1429
aty       +Thomas G. Nicholson,    Finneran & Nicholson,   44 Merrimac Street,   Newburyport, MA 01950-2574

The following entities were served by electronic transmission.
NONE.                                                                                    TOTAL: 0

          ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
dft       Lawrence E. Cuddy, Jr.
                                                                                         TOTALS: 1, * 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.

First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: Mar 31, 2005                          Signature:      _Joseph Speetjens_



# UNITED STATES BANKRUPTCY COURT
## for the
## DISTRICT OF MASSACHUSETTS

```
=========================================
```
                                            *
                                            *
In Re:                                      *
                                            * Chapter 7
    LAWRENCE E. CUDDY, JR. and              * No. 04-12166-WCH
    BETSY J. GRAF CUDDY,                    *
                                            *
                  Debtors          *
                                            *
```
=========================================
```
                                            *
                                            *
    DANVERS SAVINGS BANK,                   *
                                            *
                  Plaintiff        * Adversary Proc.
                                            * No. 04-1208
             vs.                            *
                                            *
    LAWRENCE E. CUDDY, JR.,                 *
                                            *
                Defendant        *
                                            *
```
=========================================
```

### Decision on Motion to Withdraw as Counsel to Defendant

#### Introduction

       The issue before me is whether Donald H. Adler, Thomas G. Nicholson, and the firm of Finneran & Nicholson, P.C. ("Movants") are entitled to withdraw from their representation of Lawrence E. Cuddy, Jr. ("Defendant") as a result of Defendant's nonpayment of fees. For the reasons stated below, I will enter an order denying the motion.

#### Facts

       On March 17, 2004, Defendant and Betsy J. Graf Cuddy ("Mrs. Cuddy") filed a

Q:\HILLMAN\Cuddy.wpd                         1

petition under Chapter 7.  The schedules indicated that there were no secured or priority

creditors and general creditors' claims totaled $1,006,966,[1] of which $200,000 was owed

to Danvers Savings Bank ("Danvers").

At the time of filing, Defendant and Mrs. Cuddy were both represented by the same

counsel.  He moved to withdraw on May 14, 2004 due to a conflict.  I granted the motion

on May 21, 2004.  In the meantime, on May 14, 2004, new counsel entered an appearance

in the main case for Mrs. Cuddy only.[2]  On May 10, 2004, Defendant entered into a written

"Legal Services - Fee Agreement" (the "Fee Agreement") and an Engagement Letter with

Movants.  The Movants did not introduce a copy of the Engagement Letter.

The Fee Agreement provided for an initial retainer of $2,500 and included a

provision allowing Movants to withdraw in the event that the Defendant failed to replenish

the retainer or failed to pay any outstanding invoices.  Specifically, paragraph 5 of the Fee

Agreement provides as follows:

> **Withdrawal from Representation Where Non-Payment.** It
> is agreed that if any retainer is not replenished (for the initial
> Matter and/or any and all subsequent and/or additional legal
> services requested to be performed and performed by the
> Firm) to the amount requested by the Firm within 15 days of
> the date of the bill requesting the replenishment and/or interim
> or final statement, bill or invoice for services rendered is not
> paid, when and as due, the Firm may immediately cease
> providing services under this Agreement and **the Client will
> not oppose the Firm from withdrawing its representation
> of the Client and, if requested, Client will consent in
> writing to the Firm removing any court appearance it may
> have filed in connection with representation of the Client.
> This is an essential and vital agreement to the Firm's**

---

[1]  The total includes some debts to taxing authorities.

[2]  Mrs. Cuddy is not involved in this adversary proceeding.

agreeing to provide services rendered."[3]

Donald H. Adler entered his appearance for Defendant in the main case on May 25, 2004.

On June 25, 2004, Danvers filed an Adversary Complaint against Defendant, objecting the Defendant's discharge under 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(5) and to the dischargeability of Defendant's debt to it under 11 U.S.C. § 523(a)(2)(B).

On July 26, 2004, Thomas G. Nicholson filed a "limited notice of appearance" "for the sole and limited purpose of filing the parties' Assented to Motion to Extend Time...."[4] Notwithstanding that additional agreed compensation had not been paid, he filed a general appearance for Defendant on August 9, 2004.

Movants filed a motion to withdraw as counsel to Defendant (the "Motion") on January 4, 2005.[5]  No successor counsel has entered an appearance for Defendant.  As grounds, Movants assert that as a condition precedent to their representation of Defendant in the adversary proceeding, Defendant agreed to pay an additional retainer, and that Defendant has not paid the second retainer or any additional sums for which he was billed by Movants. Under those circumstances, Movants contend that Defendant has breached the Fee Agreement and they are entitled to withdraw on that basis.  In their statement of

---

[3] Boldface in original.

[4] He cited to MLBR 9010-3 in support, but that rule does not reference limited appearances.  MLBR 9010-3(a) merely makes an entry of appearance unnecessary where another pleading is filed.  Messrs. Nicholson and Adler appear to be members of the same firm.

[5] The Motion bore the captions of both the main case and the adversary proceeding and was docketed in the latter only, A.P. No. 04-1208, Docket No. 17 but I will treat it as applicable to both.

compensation, which Movants filed on February 23, 2005,[6] they acknowledge having received $12,811.91 in the principal case with a balance remaining unpaid of $2,659.51, and having received $2,836.09 in the adversary proceeding, with a balance remaining due of $1,459.10, both as of January 20, 2005.

Defendant did not oppose the Motion. I held a hearing on the Motion and took it under advisement. Movants, Danvers, and the United States Trustee filed post-hearing briefs.

### Discussion

If the Fee Agreement is to be construed only under the basic principals of contract law, the Motion should be denied. While it allows Movants to withdraw in the event of non-payment, Movants waived that right when they entered a general appearance in the adversary proceeding without payment of the promised additional fees. This is not a simple contract dispute. It involves principles of ethics and the administration of justice.

Attorneys practicing in the Massachusetts courts are bound by the Massachusetts Rules of Professional Conduct ("RPC").[7] Massachusetts attorneys are bound by those same standards when practicing in the local federal courts.[8] In addition, of course, they are bound by the rules of this Court, including MLBR 9010-3(d):

---

[6] The United States Trustee argued that Movants' failure to file the statement of compensation required by 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016(b) was grounds for denying the Motion. That argument is mooted by Movants', albeit tardy, filing.

[7] Massachusetts Rules of Professional Conduct and Comments, Supreme Judicial Court Rule 3:07.

[8] Chimko v. Lucas (*In re* Lucas), 317 B.R. 195, 200 (D. Mass. 2004). *See* Rules of Attorney Disciplinary Enforcement for the Court of Appeals for the First Circuit, Rule IV-A; Local Rule 83.6(4)(B) (D. Mass.).

> An attorney representing a debtor in a bankruptcy case is required to represent the debtor in any adversary proceeding filed within the bankruptcy case in which the debtor is a named defendant unless the debtor expressly agrees otherwise at the commencement of the representation.

In the case at bar only the generalized "pay-or-we-will-quit" language was applicable, and I hold that the language of the Fee Agreement does not satisfy the local rule for an express agreement *ab initio*.

MLBR 9010-3(d) is an implementation of RPC Rule 1.2(c) which, as presently in force in Massachusetts, provides that "[a] lawyer may limit the objectives of the representation if the client consents after consultation." The comment to that provision as relevant here provides:

> [5] An agreement concerning the scope of representation must accord with the Rules of Professional Conduct and other law. Thus, the client may not be asked to agree to representation so limited in scope as to violate Rule 1.1....

Rule 1.1 directs the lawyer to "provide competent representation to a client." It continues "[c]ompetent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."[9]

Assuming without deciding that Defendant's signature on the Fee Agreement constitutes "consultation" within the meaning of the quoted rule, I turn to whether it provides sufficient basis for the granting of the Motion.

RPC Rule 1.16(a) provides instances where withdrawal of counsel is mandatory; it

---

[9] The Model Rule was amended in 2002 to read that a lawyer is permitted to "limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent." *See* ANNOTATED MODEL RULES OF PROFESSIONAL CONDUCT 36 (5th ed. 2004). "The amendment was intended to clarify the allowance—and regulation—of limited-representation agreements." *Ibid.*

is not involved here. RPC Rule 1.16(b) provides that a lawyer *may* withdraw from

representing a client upon certain specified grounds. As relevant here they are:

> ...if withdrawal can be accomplished without material adverse effect on the
> interests of the client, *or if* [italics supplied]:
>
> . . . .
>
> (4) the client fails substantially to fulfill an obligation to the lawyer
> regarding the lawyer's services and has been given reasonable warning that
> the lawyer will withdraw unless the obligation is fulfilled. . . .

Thus, under the RPC standards, an attorney is allowed to withdraw from a matter

even though the withdrawal will have a material adverse effect on the interests of the client,

if the client has violated the type of payment agreement before me. The only check on this

broad power is contained in RPC 1.16(c), which provides

> if permission for withdrawal from employment is required by the rules of a
> tribunal a lawyer shall not withdraw from employment in a proceeding before
> that tribunal without its permission.

This Court has such a requirement, found in MLBR 2091-1(a):

> "An attorney may withdraw from a case or proceeding without leave of the
> Court by serving a notice of withdrawal on the client and all other parties in
> interest and filing the notice, provided that:
> (1) such notice is accompanied by the filing of a notice of appearance of
> successor counsel;
> (2) there are no motions pending before the Court; and
> (3) no trial date has been set.

Unless these conditions are met, an attorney may only withdraw from a case or proceeding

with leave of the court. No successor counsel has appeared in this proceeding, hence the

necessity for the Motion.

In considering the Motion, I find myself joining in concerns voiced by Judge Grant

some years ago:

> [T]he motion comes at a time when the court has been indulging in a high
> degree of self examination with regard to the circumstances which warrant

giving an attorney permission to withdraw from the representation of his client. Because of this, the court feels it is appropriate to thoroughly discuss these concerns, so that members of the bar can not only understand the reasons for the court's action (even if they do not agree with it) but so they also can understand what will be expected of them when they undertake the representation of a bankruptcy debtor.[10]

Where permissive withdrawal is sought by an attorney, the motion is addressed to the discretion of the trial court.[11] Withdrawal will not necessarily be appropriate in all circumstances.[12] In exercising my discretion, I am concerned with the competing interests of Movants, Defendant, and the Court, for, as Judge Keeton has said, "An attorney who agrees to represent a client in a court proceeding assumes a responsibility to the court as well as to the client."[13] It is a delicate balancing act:

[E]ach case must be assessed to determine a result that will be fair to the client, the attorney and the court, taking the rights and interests of each into account.[14]

On the one hand, Movants had a reasonable expectation that they would be paid for services to be rendered. Anticipating the possibility of Defendant's failure to pay, they expressly reserved the right to withdraw from the representation in the event of non-payment. But this may not provide adequate grounds for the granting of the Motion:

---

[10] Colter v. Edsall (*In re Edsall*), 89 B.R. 772, 773 (Bankr. N.D. Ind. 1988).

[11] Andrews v. Bechtel Power Corp., 780 F.2d 124, 135 (1st Cir. 1985), *cert. denied* 476 U.S. 1172 (1986).

[12] V.H. v. J.P.H., 62 Mass.App.Ct. 910, 911, 815 N.E.2d 1096, 1097 (2004).

[13] Hammond v. T.J. Litle and Co., 809 F.Supp. 156, 159 (D. Mass. 1992). *See also* Hasbro, Inc. v. Serafino, 966 F.Supp. 108 (D. Mass. 1997).

[14] N.Y. State Bar Assn Comm. Prof. Ethics Op. No. 598 *1, 1989 WL 252367 (1989).

> An attorney who undertakes to represent a client assumes obligations toward his client which are not excused merely because the client is unable to pay fees demanded by the attorney.[15]

The primary reason for the additional services required of Movants was the adversary proceeding filed by Danvers under 11 U.S.C. §§ 523 and 727. Such actions are not common.[16] To quote Judge Grant again:

> Counsel who initiate bankruptcy proceedings on behalf of their clients can reasonably expect that the debtor's right to discharge either all or any of its debts will come under scrutiny and may be challenged in an adversary proceeding. For this reason, a complaint pursuant to either § 523 or § 727 should come as no great surprise to any debtor's attorney.[17]

Defendant appreciated that he required the services of counsel in pursuing his bankruptcy case, in my mind an entirely sensible approach.[18] After his original counsel withdrew, he hired the Movants.

And from the viewpoint of the bench, a *pro se* debtor presents often monumental

---

[15] Goldstein v. Albert (*In re* Albert), 277 B.R. 38, 46 (Bankr. S.D. N.Y. 2002).

[16] Statistics drawn from the records of this Court indicate how seldom counsel will be required to defend such actions:

| Year | Non-Business Cases Filed | §727 | §523 | Total | % |
|------|--------------------------|------|------|-------|-----|
| 2002 | 14,165 | 60 | 181 | 241 | 1.7 |
| 2003 | 15,070 | 60 | 211 | 271 | 1.7 |
| 2004 | 15,168 | 36 | 163 | 199 | 1.3 |

[17] Edsall, *supra*, at 774. I appreciate that Movants were not the original counsel for Defendant, but, as successors, they have assumed the mantle.

[18] Writing for a lay audience, I once devoted an entire chapter to this subject, ending with the italicized admonition "*YES, you do need a lawyer in a bankruptcy case.*" WILLIAM C. HILLMAN, PERSONAL BANKRUPTCY 23 (2nd ed. 1995).

problems of case administration. Judge Grant again:

> Pro se litigants present the court with important concerns. More often than not, they are unfamiliar with legal procedures or the formality of trial practice. For this reason they are to be indulged. Frequently, they lack a workable knowledge of the finer points of the issues being litigated. Thus, at trial, a line of questioning or chain of reasoning may not be pursued because they do not understand its significance—something which usually would not escape the attention of a skilled attorney. In such a situation, the court is confronted with the difficult choice between raising unspoken questions and advancing silent arguments or adopting a more passive role. To follow the first course, while often promoting a decision based on the underlying merits of a case, may tarnish th appearance of judicial impartiality. The second path, while preserving appearances, may result in an unwarranted victory almost by default. Representation by counsel generally eliminates this dilemma.
>
> More important than the difficulties they present to the court is the fact that pro se litigants, in a very real sense, can be a danger to themselves. Without an understanding of the importance of facts in issue, the applicable law, or why their discharge has even been challenged, they often flounder helplessly at trial, aimlessly pursuing meaningless points and arguments. From the standpoint of a debtor whose discharge has been challenged, to proceed pro se presents the very real possibility that the creditor will prevail for the sole reason that its opponent did not understand the facts in issue or how to defend against the allegations raised.[19]

The image that has come to my mind most insistently while working on this opinion

is this: A professional swim instructor takes on a new student with this understanding: You

have paid me my initial fee. For that money I will lead you to the swimming pool, show you

how to enter the water, and explain the basic elements of swimming. If, however, you

should begin to drown, of if some other serious problem arises, I will leave you to your own

resources unless you pay me more money.

Even if this message is clearly conveyed to the student, if the desire to learn to swim

is strong enough (just as if the need for the bankruptcy remedy is strong enough for the

---

[19] Edsall, *supra*, at 775.

debtor *in extremis*) the student will accept the terms. It looks like and sounds like a contract of adhesion, with all of the unlovely baggage that phrase carries. It is contrary to my view of the higher obligation of an attorney.

> Once a lawyer accepts retainer to represent a client he is obliged to exert his best efforts wholeheartedly to advance the clients [*sic*] legitimate interests with fidelity and diligence until he is relieved of that obligation either by his client or the court. The failure of a client to pay for his services does not relieve a lawyer of his duty to perform them completely and on time, save only when relieved as above.[20]

The resistance of courts to the practice of offering limited services (the nonce word appears to be "unbundling") is evident in a number of recent cases. The most comprehensive is *In re Egwim*,[21] in which Judge Bonapfel carefully and extensively explained the applicable principles. He points out

> three fundamental requirements that must be met before an attorney may properly limit the scope of services to be provided to a client. First, the attorney must consult with the client about the limited representation that will be provided. Second, the client must provide informed consent, and this consent should be evidenced by a writing. Most important, the limitation must be reasonable in the circumstances or, in terms of the Georgia Rule, the engagement must not be so limited as to prevent competent representation.[22]

After explaining what complications can and do arise in the context of consumer bankruptcy cases, he concludes:

> An attorney desiring to limit the scope of an engagement has the burden of demonstrating compliance with all of the conditions required for the validity of the limitation. *In the context of representing a consumer in an area of law*

---

[20] State Bar of Michigan v. Daggs, 384 Mich. 729, 732, 187 N.W.2d 227, 228 (1971).

[21] 291 B.R. 559 (Bankr. N.D. Ga. 2003).

[22] *Id.* at 571. The "Georgia Rule" is the same as RPC Rule 1.2.

*as complex as bankruptcy, it will be the unusual case where the burden can
be met.*

. . . .

In summary, the principles and authorities addressed above establish that
an attorney representing a chapter 7 debtor ordinarily may not limit the scope
of that engagement.[23]

A narrower but related example, *In re* Johnson,[24] involved an attorney whose

contract with clients provided that, in consideration of a reduced fee, he would not attend

the § 341 meeting. The practice was condemned as a matter of public policy and the

attorney was sanctioned.[25]

I hold that, in this case, the failure to replenish the retainer does not constitute cause

for withdrawal.

### Conclusion

For the reasons stated, I will enter a separate order denying the Motion.

William C. Hillman
United States Bankruptcy Judge

Dated: *3/24/05*

COUNSEL APPEARING:

Donald H. Adler, Dennis Ford Eagan, Newburyport MA, for Finneran & Nicholson, P.C.
Astrid Stevens Daly, Wears NH, Robert L. Marder, Lynn MA, for Danvers Savings Bank
Phoebe Morse, Gary L. Donahue, for the United States Trustee

---

[23] *Id.* at 572 (emphasis added).

[24] 291 B.R. 462 (Bankr. D. Minn. 2003).

[25] To the same effect, *see In re* Castorena, 270 B.R. 504 (Bankr. D. Idaho 2001);
*In re* Bancroft, 204 B.R. 548 (Bankr. C.D. Ill. 1997).



## LEGAL SERVICES -- FEE AGREEMENT

I, **Lawrence E. Cuddy, Jr.,** of **48 Green Street, Newbury, MA  01951** (the "Client"), hereby agree to retain the law firm of Finneran & Nicholson, P.C. (the "Firm"), pursuant to the following terms and conditions in connection with: certain matters described in a letter dated April 30, 2004 attached hereto (the "Engagement Letter"); and such further legal matters as may hereafter be requested by you, from time to time, to be performed by this Firm until amended, as the same may be revised and evolved from time to time (the "Engagement").

1.    **Retainer.**

    **(a)    Initial Retainer.**    The Firm, only upon receipt of a fully signed copy of the Engagement Letter and this Fee Agreement with an initial retainer of $2,500.00, agrees to represent Client in the Engagement (the "Initial Retainer").

    **(b)    Replenish Retainer.**  The Client will be required, from time to time, to replenish this Initial Retainer and/or other subsequent retainers and Client hereby agrees to do so promptly.  As set forth in the Engagement Letter, you may be required to pay the Firm a further retainer before the Firm files an appearance on your behalf in the United States Bankruptcy Court in your Chapter 7 case, which shall be determined in the sole discretion of the Firm.

    **(c)    IOLTA.**    Client hereby authorizes Firm to deposit Initial Retainer, all replenishments thereto and subsequent retainers in Firm's client account which is a so-called IOLTA account, and no interest thereon is earned by the Client or the Firm.

    **(d)    Not Flat Fee.**    Any retainer will be applied against legal services performed by the Firm and/or disbursements made for, and on behalf of, the Client as well as pay for out-of-pocket expenses, from time to time **(this does not represent a flat fee).**

    **(e)    Withdrawals.**  Client hereby authorizes the Firm to withdraw against the Retainer, and/or any other replenishment thereof, and/or other retainer, hereafter delivered by or on behalf of Client, from time to time, whether on the Initial Engagement or any other matter for the Client for legal fees, disbursements made for and on behalf of the Client as well as pay for out-of-pocket expenses.  No further authorization is required from Client for such withdrawals, from time to time.

    **(f)    Return of Retainer.**    Any portion of retainer in excess of those amounts not needed to cover professional fees and/or costs shall be returned at the conclusion of the work for the Client with a close file letter.

    **(g)    Applicability of Fee Agreement for Future Services.** Accordingly, from and after completion of the Initial Engagement, to the extent that the Firm performs

additional services for or on behalf of Client, whether or not related to the Engagement Letter, this Fee Agreement shall continue to have full force and effect.

2.    **Out-of-Pocket, Other Disbursements and Fees.**

(a)    **Out-of-Pocket, *Etc.*** The Client agrees to assume and pay for all out-of-pocket disbursements incurred in connection with the Engagement and all other client work performed by the Firm, from and after the date first above written (*e.g.*, filing fees, federal express, word processing, photocopying, printing, binding, long distance telephone and facsimile charge, certified and/or overnight mail, delivery/messenger charges and the like, clerical and secretarial staff overtime when necessary, witness fees, computerized legal research, such as WESTLAW, travel, sheriff's and constable's fees, document recording fees, asset and information searches, expenses of depositions, investigative expenses and other incidental expenses). If a particular charge is substantial, we may request that you pay it directly to the vendor or reimburse us immediately.

(b)    **Administrative Service Charge.** The Client is also responsible for a flat general administrative fee (*i.e.*, billing, intrastate telephone, postage, filing, general secretarial other than significant word processing) equaling about 6% of the total bill for services. This general administrative fee will be identified on the monthly billing as a "6% administrative charge".

3.    **Rates for Professional Services.**

(a)    **Hourly.** Professional services of the Firm shall generally be charged for all persons becoming clients on or after October 1, 2003 at the following standard hourly rate:

>    Services of Senior Partner - $275.00 per hour
>    Services of Junior Partner - $250.00 per hour
>    Services of Attorney, Of Counsel - $250.00 per hour
>    Services of Associate - $175.00 per hour
>    Services of Law Clerk - $85.00 per hour
>    Services of Paralegal - $75.00 per hour
>    Services of Word Processing - $20.00 per hour (for documents, agreements, *etc.*)

It is understood that the hourly time charges include but are not limited to: court appearances; telephone conferences; office conferences; travel time; legal research; depositions; review of file materials and documents sent or received; preparation for trials and/or negotiations; hearings and conferences; and drafting of pleadings, instruments, documents, agreements, correspondence and office memoranda.

**(b)     Other Method**.

(i)     Firm may charge flat fees for preparing the initial drafts of certain types of transactional documents, responses to audit inquiry letters and for certain other activities as may be agreed upon by the Firm and Client, from time to time.

(ii)     Our fees may be based on a variety of factors, including the time expended, the difficulty of the questions involved, the expertise in a particular area of the law that may be required, the magnitude of the matter, the results achieved, and customary fees for similar services.   We will discuss with Client any such arrangement which may include a flat fee for developing the first draft of an agreement or other document.

(c)     **Change in Fees**.     Our schedule of rates is adjusted from time to time (usually annually) and new rates will become effective under this engagement with the effective date of each adjustment. Upon request, we will be happy to provide you with a fee schedule of individuals working on your matters.

(d)     **Finance Charge**.     A finance charge of twelve percent (12%) per annum will be added to accounts billed and unpaid from a previous billing  period to the fullest extent permitted by law.

4.     **Certain Time Billing / Status / Updates and Files  Practices**.

(a)     (i)     **Billing**.        It is impossible to predict in advance the amount of time and effort that will be needed to complete Client's case. Any time spent relative to Client's matter, including conferences, telephone calls, drafting documents, research, court time, and necessary travel time, is billed at the above hourly rate.  A minimum period of five (5) minutes shall be billed for each action performed. Some of the work on Client's case may be done by an associate attorney or by a paralegal assistant. The blend of the categories of professional personnel and their respective hourly rates depend, generally, on the seriousness and complexities of the problem, the skill and experience of the lawyers and the paralegals performing the work, and the time pressures for completion of particular tasks.

(ii)     **Billing Narrative**.     **PLEASE NOTE WHEN WE BILL YOU, WE MAKE A PRACTICE OF NARRATIVELY DESCRIBING MOST ACTIVITIES DONE ON YOUR MATTER DURING THE COURSE OF THE BILLING PERIOD (USUALLY MONTHLY). WE LIST MOST ACTIVITIES EVEN IF WE DO NOT BILL YOU FOR THE ACTIVITY (_I.E._, CERTAIN TELEPHONE CALLS, _ETC_.). WE DO THIS NOT ONLY TO ACCOUNT TO YOU FOR OUR TIME AND CHARGES, BUT ALSO TO INFORM YOU AS TO ACTIONS AND INACTIONS TAKEN ON YOUR MATTER AS WELL**

Page 3

AS TO PROVIDE YOU A STATUS REPORT. WE ARE A SERVICE
BUSINESS AND WE WISH TO PROVIDE YOU SERVICE AND
INFORMATION AND WELCOME YOUR INPUT AT ALL TIMES.

(b)    **Privileged Communications**.         Because of our detailed and descriptive
billing, we wish to inform you that such billing may contain information that is privileged,
confidential and exempt from disclosure under applicable law. Accordingly, please be
careful in "publishing" and/or circulating the Firm's billing. **The billing should be directed
to the intended recipient, or the employee or agent responsible for delivering the
transmittal to the intended recipient; you are hereby notified that any dissemination,
distribution or copying of this billing narrative communication should be strictly
prohibited. Further, we recommend that you destroy/shred all our narrative billings
(remembering the Firm's 9-year retention policy) or if you must retain billing, retain
all billing in a secure file with all other attorney-client confidential communications.**

(c)    **Client Contact Encouraged**.        Clients are encouraged to contact Firm,
from time to time, regarding the status of the Initial Engagement and any and al subsequent
and/or additional legal services performed on behalf of the Client by Firm or any questions
you may have regarding the foregoing.

(d)    **Files**.    Upon closing a client matter, the files are stored off-site for not more
than nine (9) years and any request to retrieve files from storage will result in the Firm's then
retrieval fee.

(e)    **Client Responsibility to Review Billing**.    **Client promises to pay
promptly any and all amounts when due for services rendered by Firm to Client, as
evidenced by Firm's invoices and/or replenish the Initial Retainer and all subsequent
retainers when requested. Client must review each invoice carefully upon receipt and
if Client does not object either to services or amounts listed on each such invoice within
30 days of mailing of such invoice, the services, activities and amounts set forth on such
invoice shall be conclusive evidence of the Client's authorization of the services and
activities set forth therein as well as the amounts owed by Client to Firm and the
Client's knowledge, consent and approval of the services rendered for that period.**

5.    **Withdrawal from Representation Where Non-Payment**.        It is agreed that
if any retainer is not replenished (for the initial Matter and/or any and all subsequent and/or
additional legal services requested to be performed and performed by the Firm) to the amount
requested by the Firm within 15 days of the date of the bill requesting the replenishment and/or
interim or final statement, bill or invoice for services rendered is not paid, when and as due, the Firm
may immediately cease providing services under this Agreement and the Client will not oppose the
Firm from withdrawing its representation of the Client and, if requested, Client will consent
in writing to the Firm removing any court appearance it may have filed in connection with

representation of the Client. **This is an essential and vital agreement to the Firm's agreeing to provide services rendered**.

6.      **ARBITRATION.**      **CLIENT AND FIRM AGREE TO SUBMIT TO BINDING ARBITRATION (SO AS TO AVOID EXPENSE AND DELAY) ANY AND ALL FEE AND/OR OTHER DISPUTES WHICH MAY ARISE BETWEEN FIRM AND CLIENT. FEE DISPUTES SHALL BE SUBMITTED TO THE FEE ARBITRATION COMMITTEE OF THE MASSACHUSETTS BAR ASSOCIATION. CLIENT AND FIRM DEEM IT TO BE IN THEIR MUTUAL AND RESPECTIVE INTEREST TO BE BOUND BY THE DECISION OF ANY ARBITRATION.**

7.      <u>No Results Guaranteed or Assured</u>.      The Firm and Client state that no results have been guaranteed by the Attorney/Firm to the Client and that this agreement is not based upon any such promises or anticipated results.

8.      <u>Restrict Access</u>.      **BECAUSE OF OUR DETAILED AND DESCRIPTIVE BILLING (SEE SECTION 4 ABOVE), WE WISH TO INFORM YOU THAT SUCH <u>BILLING MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL</u>. ACCORDINGLY, ACCESS TO THOSE INVOICES MUST BE RESTRICTED TO YOU IN ORDER TO ENJOY THE ATTORNEY-CLIENT PRIVILEGE. <u>PLEASE BE CAREFUL IN "PUBLISHING" AND/OR CIRCULATING THE FIRM'S BILLING</u>.   ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION SHOULD BE STRICTLY PROHIBITED OR THE ATTORNEY-CLIENT PRIVILEGE COULD BE DEEMED TO BE WAIVED. THE BILLING SHOULD BE DIRECTED TO THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE TRANSMITTAL TO THE INTENDED RECIPIENT.**

This Agreement is signed as an instrument under seal and under the pains and penalties of perjury.

Lawrence E. Caddy, Jr.                                         5/18/04

FINNERAN & NICHOLSON, P.C.

By:                                 5·10·04

Donald H. Adler

(kc)F:\Cases\04-118\fee.agr.wpd

Page 5