## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Lawrence E. Cuddy, Jr.,**<br>**Plaintiff,** | ) |
| | ) |
| | ) **Bankruptcy Appeal** |
| **v.** | ) |
| | ) **Case No. 1:05-cv-10776-GAO** |
| **Danvers Savings Bank,** | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM OF LAW IN SUPPORT OF APPELLANT'S
## EMERGENCY MOTION FOR STAY OF PROCEEDINGS PENDING APPEAL

### INTRODUCTION

The Appellants, Donald H. Adler, Esquire, Thomas G. Nicholson, Esquire and the firm of Finneran & Nicholson, P.C. ("Counsel") submits this Memorandum of Law in Support of Counsel's Emergency Motion for Stay of Proceedings Pending Appeal. Counsel states that it filed a Motion for Stay to the Bankruptcy Court on May 17, 2005, which was denied after hearing on June 8, 2005. There is currently scheduled on July 8, 2005 the continued deposition of Lawrence E. Cuddy, Jr. ("Cuddy"). Counsel will be irreparably harmed by having to attend the deposition of Cuddy and continue its representation of Cuddy in the underlying Adversary Proceeding. Cuddy has acknowledged he has no ability to pay Counsel for past due amounts due Counsel, nor does he have the ability to pay any future anticipated trial costs and fees. Cuddy does not oppose Counsel's Motion to Withdraw. Counsel expects that the costs and fees incurred in defending the Adversary Proceeding could exceed $50,000.00. Counsel is a small five attorney firm and such an expenditure of costs and fees would be a huge irreparable financial detriment.

1

## JURISDICTION

Pursuant to 28 U.S.C. § 158(a)(3) and Bankr. P. Rule 8001(b), on April 8, 2005, within

ten days of the entry of the Judge Hillman's Order entered on March 29, 2005 denying Counsel's

Motion to Withdraw Appearance, Counsel has timely filed its Notice of Appeal, Motion for

Leave and Statement of Election to be heard before the District Court, which was entered on the

docket of the United States District Court for District of Massachusetts on April 18, 2005, Civil

Docket Number 1:05-cv-10776-GAO. As required under, Bankr. P. Rule 8005, Counsel filed its

Ex Parte Motion for Stay Pending Appeal with the Bankruptcy Court on May 17, 2005. On that

same day, the Bankruptcy Court temporarily granted Counsel's motion until the Court could

consider the merits of the motion at a hearing.

After the hearing held on June 8, 2005, Judge Hillman denied Counsel's Motion for a

stay of the proceedings pending appeal. In denying Counsel's Motion for Stay, Judge Hillman

stated,

> Well, I think the first thing I have to deal with is the fact that we have this brand new
> authority from the Court of Appeals (*see* Rivera-Domenech v. Calvesbert Law Offices
> PSC, 402 F.3d 246 (1st Cir. March 29, 2005) (First Circuit opinion issued on the same
> day Judge Hillman's order denying the motion to withdraw was entered)) which, if
> movant is correct, would say I was wrong. I don't agree that it says that I was wrong. I
> think that a bankruptcy proceeding, as to the debtor's counsel, is sufficiently different
> from, or differs - - different from the cases that were involved in those Circuit opinions,
> so that I may well be right, and I still think I'm right.
>
> I think Counsel should know, at least in Courtroom Number Three at . . .10 Causeway
> Street, that if you're in a case, you're in a case, and you're not going to throw your client
> into bankruptcy and then decide to run away because you don't get paid. I don't care
> what your contract with the client says. I think that's called professionalism. This is not
> a business. At least it's not, so long as I'm on this bench it's not going to be a business.
> We're going to pretend that it's still a profession, and I will act accordingly.
>
> As a result, I really don't think I'm going to get overturned, especially when you consider
> that this is a discretionary motion, and I don't think I was grossly in error. Indeed, I don't

think I was in error at all, or I wouldn't have done it.

Hr'g Tr. on Mot. Of Def. For Stay Pending Appeal before Hon. William C. Hillman, J.U.S.B.C. at p. 15, ll.14-25; p. 16, ll. 1-12 (Rivera citation added) (transcript of hearing attached hereto as Exhibit A).

Pursuant to Rule 8005, Counsel now brings this Emergency Motion for Stay of Proceedings Pending Appeal before the District Court seeking such relief.

## STATEMENT OF FACTS

On or about May 10, 2004, Cuddy entered into a written Engagement Letter and Fee Agreement with Counsel. The Fee Agreement specifically set forth the terms and conditions of Counsel's representation as successor counsel in Cuddy's Chapter 7 case and any other matter that arose as a result. See Exhibit B attached hereto (the "Fee Agreement"). Specifically, the Fee Agreement sets forth Cuddy's obligations to pay all Out-of-Pocket, Other Disbursements and Fees (Exhibit B at ¶ 2(a)) at Counsel's Rates for Professional Services (Exhibit B at ¶ 3(a)), Counsel's billing policies (Exhibit B at ¶ 4(a)(i)), and most importantly with regard to the Motion to Withdraw, a provision entitled, Withdrawal from Representation Where Non-Payment (Exhibit B at ¶ 5). By the terms of the Fee Agreement, Cuddy agreed to allow Counsel to withdraw in the event that Cuddy failed to replenish the retainer and/or failed to pay any outstanding invoices. Specifically, Paragraph 5 of the Fee Agreement provides as follows:

**Withdrawal from Representation Where Non-Payment**. It is agreed that if any retainer is not replenished (for the initial Matter and/or any and all subsequent and/or additional legal services requested to be performed and performed by the Firm) to the amount requested by the Firm within 15 days of the date of the bill requesting the replenishment and/or interim or final statement, bill or invoice for services rendered is not paid, when and as due, the Firm may immediately cease providing services under this Agreement and **the Client will not oppose the Firm from withdrawing its representation of the Client and, if requested, Client will consent in writing to the**

3

**Firm removing any court appearance it may have filed in connection with representation of the Client. This is an essential and vital agreement to the Firm's agreeing to provide services rendered.**

Cuddy has acknowledged his breach of his contractual obligations owed to Counsel under the Fee Agreement. As a condition precedent to Counsel's representation of Cuddy in the Adversary Proceeding on Cuddy's behalf ("Adversary Appearance"), Cuddy agreed to pay Counsel an additional retainer before Counsel filed its Adversary Appearance. Cuddy did not pay the additional retainer in advance, however, he did agree to pay the Retainer immediately ("Debtor's Assurance") after Counsel filed the Adversary Appearance and Cuddy's Answer in the Adversary Proceeding (the "Answer"). On August 9, 2004, in reliance on Debtor's Assurance, Counsel filed the Adversary Appearance and Answer.

Between July 7, 2004 and December 29, 2004, Counsel made numerous telephone calls to Cuddy, left numerous detailed voice mails for Cuddy, had multiple telephone and personal conferences with Cuddy and sent multiple letters to Cuddy and e-mailed numerous correspondence to Cuddy, regarding Cuddy's obligation to pay his outstanding fees and the additional retainer. Further, as early as two months prior to Counsel filing its Motion to Withdraw, Counsel advised Counsel in writing that Counsel would withdraw its appearance should Cuddy fail and/or refuse to pay the Retainer and the balance of the fees due Counsel. Specifically, during this approximately six-month time frame from July through December, 2004, Counsel had twenty-two (22) communications Cuddy regarding the non-payment of fees and the additional retainer. Cuddy continues to have an outstanding balance due Counsel. Counsel is currently owed Sixteen Thousand One Hundred Seventy Eight Dollars and Fifty Three Cents ($16,178.53) as of May 20, 2005.

4

The plaintiff in the Adversary Proceeding, Danvers Savings Bank (the "Bank") filed the Adversary Proceeding on June 25, 2004. The Bank did nothing to prosecute or advance its case until December 28, 2004 when it filed a Motion to Examine Debtor Pursuant to Rule 2004(a) which was denied by the Bankruptcy Court. On April 6, 2005, the Bank commenced its deposition of Cuddy, which was suspended after only two (2) hours and was scheduled to continue on May 18, 2005. The continued deposition was canceled pursuant to the Bankruptcy Court's Order temporarily granting Counsel's Ex Parte Motion for Stay of Proceedings Pending Appeal until the Court could consider the merits of the Motion in a hearing held on June 8, 2005. After the Bankruptcy Court denied Counsel's Motion for Stay, the Bank scheduled the continued deposition to recommence on July 8, 2005.

There are no pending motions before the Bankruptcy Court and the case has not been scheduled for any case conferences or a pre-trial conference. The case does not appear on a trial list. In essence, other than the initial filings of the Adversary Complaint and the Answer and the Bank's deposition of Cuddy, the Adversary Proceeding is in its infancy.

## ARGUMENT

The issuance of a stay pending appeal pursuant to Bankr. P. Rule 8005 is "in the nature of a preliminary injunction." In re Great Barrington Fair & Amusement, Inc., 53 B.R. 237, 239 (Bankr. D. Mass. 1985) (*quoting* In re Tolco Properties, Inc., 6 B.R. 490, 491 (Bankr. E.D. Va. 1980). The standards for granting a stay pending appeal require that the moving party meet the following elements:

> "(1) The applicant must make a strong showing that he is likely to succeed on the merits of the appeal;
> (2) The applicant must show that, unless a stay is granted, he will suffer irreparable injury;

5

> (3) The applicant must show that no substantial harm will be suffered by other interested parties;
>
> (4) The Court must find that granting the stay will not harm the public interest."

Great Barrington, 53 B.R. at 239.

## I.   Counsel has a strong likelihood of success on the merits on its appeal.

While a motion to withdraw representation "is a matter addressed to the discretion of the trial court and will be reversed on appeal only when the trial court has abused its discretion," the denial of such a motion may be reversed on appeal where the withdrawal is consistent with the Rules of Professional Conduct in effect and where the attorney faces substantial additional financial exposure and potential civil liability to the client if the attorney is not allowed to withdraw. Rivera-Domenech v. Calvesbert Law Offices PSC, 402 F.3d 246 (1st Cir. March 29, 2005) (attached hereto as Exhibit C);   Lieberman v. Polytop Corp., 2001 WL 196759 (1st Cir. Feb. 21, 2001) (unpublished decision) (attached hereto as Exhibit D); *see also* Barton v. Dist. of Columbia, 209 F.R.D. 274, 278 (D. D.C. 2002).   In two instances, the United States Court of Appeals for the First Circuit has determined that the denial of a motion to withdraw may arise to an abuse of discretion where such an order would place the attorney in a position in which he would have "to front the necessary expenses, without any real assurance that he will be paid for any of it, especially where he already is owed a substantial sum and the client has violated the written fee agreement . . . [and the attorney] could expose himself to civil liability to his client." Rivera-Domenech, 402 F.3d at 249; Lieberman, 2001 WL 196759. In Lieberman, as quoted in Rivera-Domenech, the First Circuit determined that the lower court abused its discretion in refusing to allow the attorney to withdraw. As grounds for finding an abuse of discretion, the Court stated, it would expect "too much of counsel to expend the additional energy necessary to

6

go to trial, and to front the necessary expenses without any real assurance that he will be paid for any of it." Rivera-Domenech, 402 F.3d at 249 (*quoting* Lieberman, 2001 WL 196759). The Rivera-Domenech decision was issued on March 29, 2005, the same day that the Bankruptcy Court's opinion denying Counsel's Motion to Withdraw was entered on the Adversary Proceeding docket. As a result, Counsel's Appeal is likely to be granted particularly in light of the First Circuit's decision, which Judge Hillman did not available at the time of his denial of the Motion to Withdraw.

As was the case in Lieberman, the standards of conduct of attorneys practicing before this Court are governed by a professional conduct rule that states that an attorney may withdraw where the client "fails substantially to fulfil an obligation to the attorney." *See* Mass. R. Prof. C. 1.16. In Lieberman, the First Circuit determined that the client had failed to substantially fulfil an obligation to the attorney by failing to pay overdue legal fees despite numerous warnings that failure to pay would result in withdrawal, needing to be repeatedly reminded to replenish the retainer, and where the client had no reasonable prospect of being able to pay for the legal services. Lieberman, 2001 WL 196759; *see also* Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co., 310 F.3d 537, 539 (7th Cir. 2002) (determining lower court abused discretion in denying counsel's motion to withdraw where a small firm had been unpaid for legal fees, would be burdened by prospect of further uncompensated outlays, had provided reasonable notice to the client of the failure to pay and right to withdraw and where motion to withdraw was brought during a quiet period in the litigation). Under these circumstances, the First Circuit determined that withdrawal was consistent with Rules of Professional Conduct. Lieberman, 2001 WL 196759.

## II.     Counsel will suffer irreparable harm.

Counsel will be irreparably harmed and Counsel's appeal will be rendered moot by denying a stay and requiring Counsel to represent Cuddy in the Adversary Proceeding. The Bankruptcy Court's Order entered on March 29, 2005 ("Order," attached hereto as Exhibit 1), denied Counsel's Motion to withdraw its appearance and, therefore requires Counsel to continue representing Cuddy in this action. Unlike the situation in Lieberman, where the case was "nearly ready for trial," the prosecution of the Adversary Proceeding is in its infancy. Counsel will be faced with the "substantial additional financial exposure" not only trial itself, but for all pre-trial matters, including discovery, which most likely shall encompass numerous depositions, retention of expert witness(es) and requests for the production of documents. As a result, if the proceedings are not stayed during Counsel's appeal of the Order, Counsel's appeal will become moot, Counsel will be left without a remedy and will suffer irreparable injury.

Should Counsel be required to continue representing Cuddy in the Adversary Proceeding, this amount owed to Counsel will increase greatly. Counsel estimates the fees and costs Counsel could incur to defend the Adversary Proceeding would be a minimum $35,000.00 and likely closer to $50,000.00. Counsel estimates that given the nature of the claims and defenses raised in the Adversary Proceeding, that Counsel may have to take six (6) to ten (10) depositions. Further, Counsel expects a four (4) to five (5) day trial. The costs alone, without reflecting fees for Counsel's services, could exceed $10,000.00. These expenditures and the amount of time required for these services will greatly impact Counsel as Counsel is a small, five attorney firm.

An attorney's continued representation of a client throughout the trial without filing an interlocutory appeal of the denial of will effectively moot "any relief from the erroneous order

8

denying his motion to withdraw." Rivera-Domenech, 402 F.3d at 249. "[A]n order compelling a lawyer to work without prospect of compensation is unrelated to the merits of the dispute, cannot be rectified at the end of the case, and has a potential to cause significant hardship." Fidelity Nat'l Title Ins. Co., 310 F.3d at 539. As a result, such an order is immediately appealable as a collateral order. *Id.* Requiring Counsel to continue to represent the client after denial of its Motion to Withdraw without allowing the stay pending appeal would have the effect of making the Court's Order "effectively unreviewable." Whiting v. Lacara, 187 F.3d 317, 320 (2d Cir. 1999). Further, forcing Counsel to represent a client against his will is irreparable. *Id.* "An order requiring an attorney to continue representing a client in a civil action without compensation may subject the attorney to irreparable harm and amount to an order of specific performance." Lieberman v. Polytop Corp., 2001 WL 196759. In this instance, should Counsel not be granted a stay pending its Appeal, Counsel will be required to continue incurring expenses and providing services, with no expectation of payment therefor, including representing Cuddy in the continued deposition scheduled for July 8, 2005, a scenario that will effectively moot Counsel's Appeal.

## III.   No other interested parties will suffer substantial harm.

There will be no substantial harm caused to the Bank, by reason of the grant of a  stay pending Counsel's appeal. The Bank's prosecution of this action is in its infancy. Further, this is a quiet time in the litigation. There are no motions pending, no pre-trial or case management conference dates assigned and no trial date has been assigned. Further, there has been little discovery done in the eleven months since the commencement of Bank's Adversary Proceeding to date, with the only exception being the deposition of Cuddy, which the Bank commenced on

9

April 6, 2005. There will be no harm caused to the Bank should a stay be ordered while

Counsel's appeal is heard. In addition to the fact there will be no disruption to the prosecution of

the action caused by a stay pending appeal, it is an important "basic rule in bankruptcy, that to

maintain the status quo during the pendency of an appeal, a party must obtain a stay pending

appeal." In re Lomagno, 320 B.R. 473, 481 (B.A.P. 1st Cir. 2005).

## IV.    **Granting the Motion for Stay will not harm the public interest.**

Counsel's Motion for Stay Pending Appeal is not contrary to public policy. Counsel's

Motion to Withdraw is consistent with the Massachusetts Rules of Professional Conduct

allowing an attorney to withdraw from representation of a client where the client has failed to or

cannot substantially meet his obligations to the attorney. Mass. R. Prof. C. 1.16. Further, Cuddy

has acknowledged that he has no ability to comply with the terms of the Fee Agreement or pay

balances currently due and may be incurred in the future. *See* Hammond v. T.J. Litle & Co., Inc.,

809 F. Supp. 156, 163 (D. Mass. 1992) ("a client, when engaging counsel, assumes an obligation

of good faith and must act with due regard for an attorney's right to be compensated for work

done on a client's behalf.").

Respectfully submitted,
Finneran & Nicholson, P.C.

Dated: July 1, 2005

I hereby certify that a true copy of
the above document was served
upon the attorney of record for each
party by mail on 7/1/05
and email /transmission

Thomas G. Nicholson, Esq. (BBO# 548472)
Donald H. Adler, Esq. (BBO# 012620)
Of Counsel
Finneran & Nicholson, P.C.
44 Merrimac Street
Newburyport, MA 01950
Telephone: (978)462-1514
Fax: (978)465-2584)465-2584

F:\Cases\05-071-WithdrawalAppeal.MEM.StayPendingAppeal.DistCt(2).wpd

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS - BOSTON

```
===============================
IN THE MATTER OF:                 .    Case #04-12166
                                  .
  LAWRENCE E. CUDDY, JR.          .    Boston, Massachusetts
  BETSY G. CUDDY                  .    June 8, 2005
                     Debtors      .    9:19:18 a.m. O'clock
===============================
DANVERS SAVINGS BANK              .    Adv. #04-1208
                  Plaintiff,      .
        v.                        .
LAWRENCE E. CUDDY, JR.            .
                  Defendant.      .
===============================
```

### TRANSCRIPT OF HEARING ON:
### (#42) MOTION OF DEFENDANT FOR STAY PENDING APPEAL;
### (#54) OPPOSITION BY PLAINTIFF
### BEFORE THE HONORABLE WILLIAM C. HILLMAN, J.U.S.B.C.

**APPEARANCES:**

For the Plaintiff:                       ROBERT L. MARDER, ESQ.
                                         85 Exchange Street,   Suite L10
                                         Lynn, MA  01901

For the Debtor/Defendant, Lawrence E. Cuddy, Jr.: THOMAS G. NICHOLSON, ESQ.
                                         Finneran & Nicholson
                                         44 Merrimac Street
                                         Newburyport, MA  01950

Electronic Sound Recording Operator:   Mary Jo Tedder

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

## GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ 08234-5901**
**1-609-927-0299    FAX 1-609-927-6420    1-800-471-0299**
**e-mail - irwingloria@comcast.net**

```
 1  (At 9:19:18 a.m.)

 2              THE COURT:   Danvers Savings Bank vs. Cuddy.

 3              MR. NICHOLSON:   Good morning, Your Honor.

 4              THE COURT:   Be seated.   Okay, motion for a stay.

 5              MR. NICHOLSON:   Yes, Your Honor.

 6              THE COURT:   Go ahead, sir.

 7              MR. NICHOLSON:   Thomas Nicholson for the moving

 8  party, Your Honor.

 9              THE COURT:   Yes, sir.

10              MR. NICHOLSON:   Your Honor, this is a motion to

11  stay the underlying adversary proceeding.   In this instance my

12  firm, Finneran & Nicholson, had previously filed a motion to

13  withdraw as counsel for Mr. Cuddy.   That motion was filed on

14  January -- January 6th.   The Court had held an initial hearing

15  on January 26th.

16              THE COURT:   I remember the background.

17              MR. NICHOLSON:   And the Court issued a decision on

18  June -- March 24th.

19              THE COURT:   Mmhmm.

20              MR. NICHOLSON:   The Court denied our motion.   There

21  was a deposition of Mr. Cuddy then scheduled for April 6th.   We

22  attended the first day of Mr. Cuddy's deposition on April 6th.

23  It lasted approximately two hours, at which point Danvers

24  Savings Bank initiated settlement negotiations with Mr. Cuddy.

25  The parties agreed to suspend the deposition at that time, and
```

```
 1  that Mrs. Cuddy had again refused to participate in the
 2  settlement.  So on May 17th we learned that the settlement
 3  negotiations that the parties had undertaken for the prior six
 4  weeks were not going to be consummated and could not be
 5  consummated because the party who was essential to the
 6  negotiations would have refused to participate.  On that day
 7  we filed our ex parte motion for a stay.  Your Honor granted
 8  that motion and set the hearing down for today.
 9              Now with respect to the motion for a stay, Your
10  Honor, the moving party is required to show -- meet four
11  elements under Rule 8005.  The first is the applicant must
12  make a strong showing that he is likely to succeed on the
13  merits of the appeal; the applicant must show that unless a
14  stay is granted, he will suffer irreparable injury; the
15  applicant must show that no substantial harm will be suffered
16  by other interested parties; and the Court must find that
17  granting the stay will not harm the public interest.  We
18  submit to the Court that we meet all of the elements.
19              In this instance, Your Honor, the initial motion to
20  withdraw was based in part upon a non-published decision that
21  had been issued by the First Circuit -- the Lieberman
22  decision, which is cited in our motion.  At that time it was
23  not a published decision.
24              Your Honor issued your decision denying our motion
25  on March 24th.  On March 29th, the First Circuit issued the
```

1   *Rivera* decision, again cited in our papers; and the *Rivera*
2   decision then confirmed that it is the opinion of the First
3   Circuit that it would be an abuse of discretion if, in fact,
4   motions -- motion to withdraw when -- and then the Court
5   cites:

6            "It simply expects too much of counsel to expend the
7            additional energy necessary to go to trial and front
8            the necessary expenses without any real assurance he
9            will be paid for any of it, especially where he is
10          already owed a substantial sum, and the client has
11          violated a written fee agreement.  Further, if
12          counsel does not expend the necessary effort and
13          does not front the trial expenses, he could very
14          well expose himself to civil liability to his
15          client."

16 We refuse to place counsel in such a position.  We submit to
17 the Court that it is our position that we are -- we meet all
18 the elements of that test.

19       We had a written agreement with Mr. Cuddy.  Mr.
20 Cuddy failed to provide a retainer.  Mr. Cuddy has failed to
21 pay past due balances.  Mr. Cuddy has told us he has no
22 ability and expectation to be able to pay any fees on an
23 ongoing basis.

24       Right now the only discovery that has been
25 undertaken by the bank in this case was to initiate this

1 | deposition, which has only gone on for two hours. We would
2 | expect that there may be as many as five to seven additional
3 | depositions that we believe we would have to take in order to
4 | prove up Mr. Cuddy's defenses in this action. We would be
5 | forced to expend the money to cover those expenses. We would
6 | expect that we've also -- part of the defense would be that it
7 | may be necessary to hire a trial expert, which we would have
8 | to front the expenses for.

9 |         We are definitely in the situation, Your Honor,
10 | where my firm, a very small firm of only six lawyers, would be
11 | in a situation where we would have to front a considerable
12 | amount for trial expenses, and we would also have no
13 | reasonable expectation at all of ever being reimbursed for any
14 | of our fees or any of the trial expenses. We believe that we
15 | will be successful on our appeal.

16 |         With respect to the second element that we will
17 | suffer irreparable injury, again, Your Honor, we would submit
18 | that the trial expenses and fees meet that standard. With
19 | respect to the -- that the applicant must show that no
20 | substantial harm will be suffered by any other interested
21 | party. The only other interested party is Danvers Savings
22 | Bank.

23 |         I think it's interesting for the Court to understand
24 | the history of Danvers Savings Bank with respect to this
25 | matter, and I don't just mean the adversary proceeding, Your

1 Honor, but its pursuit of Mr. Cuddy for this obligation.

2 This obligation arises from a note that Mr. Cuddy
3 signed on behalf of a company called Quick Graph in August of
4 2002. At that time he also signed an unlimited personal
5 guarantee. In December -- December 10th, 2002, Quick Graph
6 filed a Chapter 7 bankruptcy. On December 16th, 2002, Danvers
7 Savings Bank issued a notice of default under the personal
8 guarantee and notified Mr. Cuddy it intended to pursue all of
9 its rights.

10 Danvers Savings Bank did nothing -- didn't pursue
11 any rights and didn't file any formal action against Mr. Cuddy
12 until September 3rd, 2003 -- ten months went by, Judge, and
13 they didn't do anything with respect to Mr. Cuddy. They
14 filed the action in September 2003, they served him on October
15 9th, 2003, and again, the case lay there doing nothing until
16 March of 2004, six months after Danvers Savings Bank initiated
17 that action. Mr. Cuddy never filed an answer, and it wasn't
18 until March, six months later that they moved for a default
19 and a request for an assessment of damages.

20 Mr. Cuddy filed this Chapter 7 petition on March
21 17th. They filed their adversary proceeding June 23rd of 2004.
22 We filed our answer on behalf of Mr. Cuddy August 9th of 2004,
23 and the only thing the bank did, from the day that they filed
24 the adversary proceeding until June 20 -- January 21st, 2005
25 was to issue one subpoena. The bank, I would suggest to you,

1 has been less than diligent pursuing its own rights.  The bank
2 can't possibly come to this Court now and say that they are in
3 any way going to be hindered or prejudiced in any way if the
4 Court issues this stay.  The only thing that the bank is
5 undertaking to do is start a deposition, which they chose to
6 suspend, that they agreed to suspend, rather, after two hours.

7           At this point, Your Honor, we are now in a
8 situation.  The case law we've cited in our brief cites on
9 many occasions the Courts have said that the motion to
10 withdraw or the appeal has been timely taken when the
11 litigation is at a quiet time.  That's the language used in
12 the case law.

13          I would suggest to the Court, this is that quiet
14 time, Your Honor.  The bank -- there are no pending orders.
15 There is no case management conference, no scheduling orders,
16 no discovery deadlines, no court deadlines at all, no pre-
17 trial conference, no trial, no trial date set.  There is
18 absolutely no prejudice that the bank can possibly claim at
19 this point, as the bank has, since we filed our answer, five
20 months went by before they even attempted to pursue any
21 discovery; and at this point, if they -- if the bank is
22 ordered to wait until our appeal is heard, the bank can't
23 possibly claim that they -- that they're going to lose any
24 rights at this point.

25          The final standard, Your Honor, is that the granting

1 the stay will not harm any public interest, and I would
2 suggest to the Court that granting the stay will increase the
3 public interest and confirm the public interest. That public
4 interest is, Your Honor, that in this instance, we entered
5 into a contract with our client. We both -- my client was an
6 experienced, well-educated businessman. This is not an
7 unsophisticated individual. Mr. Cuddy undertook -- sought out
8 counsel to replace his initial counsel, he understood what his
9 obligations are. He has acknowledged his obligations all the
10 way along. He has confirmed that he cannot meet those
11 obligations. He does not oppose our withdrawing under these
12 circumstances.

13        The public interest, I would suggest to the Court,
14 is that the parties should be able to avail themselves of the
15 contractual rights that they have agreed to. We set forth
16 certain parameters of our contractual undertakings, and Mr.
17 Cuddy has agreed to those. He's willing to honor those
18 obligations, and the public interest is, the parties should be
19 allowed to meet those obligations.

20        Accordingly, Your Honor, I would ask that the Court
21 grant our motion for a stay.

22        THE COURT:   Thank you.  Mr. Marder.

23        MR. MARDER:   Thank you, Your Honor.  If I may,
24 Judge, just to clarify some points. This deposition of May
25 18th did not come out of the blue. It was  agreed to well in

#04-12166                     AP#04-1208                  6-8-05

 1  advance of May 18th, and you have a copy, by the way, of the
 2  e-mail that's dated -- I believe it's April 25, as an exhibit
 3  to the opposition, where it was agreed that May 18th would be
 4  the date for the deposition.

 5          But as importantly, Judge, if not more so, going
 6  back as early as April the 20th, the quote/unquote "necessity"
 7  of what the terms of the settlement would be in broad
 8  prospectus -- the note, a mortgage, a security interest in a
 9  house -- was all disclosed. There is an e-mail, Judge --
10  again, these are all appended. There's nothing that just sort
11  of happened here.

12          On April the 25th the bank indicated, and I informed
13  counsel, this is what it must be. If not, we're going no
14  place. During this entire period of time everybody was
15  negotiating for quote/unquote "settlement." On the time or on
16  the date, rather, that the notice for relief to appeal was
17  filed, there was no motion at that point to stay the
18  proceedings -- nothing happened until -- until apparently, and
19  we don't know until today -- on May 17th, the mother would not
20  go forward, wouldn't take part -- whatever; and then at that
21  point in time, it's not because there's going to be
22  irreparable harm, it's because the settlement didn't take
23  place.

24          I suggest that under the case law that there is no
25  reasonable likelihood of success that's been shown at this

 1  point.  We all acknowledge that the decision that the Court
 2  issued in March was discretionary.  Even my brother in his
 3  opposition in his brief said the case law is basically
 4  discretionary.   The irreparable harm, we have one deposition.
 5  That's it.  That's the only discovery that's pending.  That's
 6  the only thing the bank intends to do.

 7              And yet what's really happened here -- what's really
 8  happened is because a settlement didn't work out -- and that
 9  happens.  I'm not blaming anybody for the fact that the
10  settlement "blew up," quote/unquote.  And I'm not accusing
11  anybody of bad faith the settlement didn't quote/unquote "come
12  to fruition."  But the point is, that's the reason for the
13  stay.

14              That's not -- I suggest to you -- ample reason for a
15  stay of proceedings, because the agreement didn't work out,
16  and what we had agreed to do already, a month and a half
17  earlier, namely complete the deposition. Now we don't want to
18  do it.

19              I suggest to you that based on the equities of this
20  situation as well as the law that their motion for stay be
21  denied.

22              THE COURT:    Thank you.

23              MR. NICHOLSON:    Your Honor, may I be --

24              THE COURT:    Yes, sir.

25              MR. NICHOLSON:    -- may I respond?  First of all,

1 | Your Honor, the -- Mr. Marder knows that on April 20th all of
2 | the terms were disclosed.  Mr. Marder was well aware
3 | throughout the entire process that there were two keys to the
4 | settlement of this case, neither of which we controlled, nor
5 | did Mr. Cuddy control.  One was Mrs. Cuddy's participation.
6 | Mrs. Cuddy was not represented, nor has she ever been
7 | represented by my firm.  She, in fact, has separate counsel,
8 | we thought.  We tried to secure confirmation from her counsel
9 | that she was willing to participate.  We sent copies of all of
10 | the documents to him, and he advised us he had no authority to
11 | go forward.  He had no authority to act on her behalf in this
12 | regard.    That's what caused me to finally contact her.

13 |          The additional issue that Mr. Marder is -- fails to
14 | inform the Court is, even if the parties had agreed, Your
15 | Honor, it was still subject to the Court's approval, and I
16 | would suggest to the Court that it is entirely possible that
17 | when the suggested settlement was proposed to the Court, the
18 | U.S. Trustee's Office had the opportunity to object.  The
19 | Chapter 7 Trustee, other creditors; and it was subject to Your
20 | Honor's approval nonetheless, so the reason for the stay was
21 | not that the settlement negotiations failed.  The reason for
22 | the stay is, we are now back in the litigation, and we are
23 | faced with all of these ever-mounting costs and expenses.

24 |          Again, the case law says that the parties should try
25 | to find a quiet time.

#04-12166                          AP#04-1208                          6-8-05

 1          I would also refer to the Court to the **Hammond vs.**
 2  **T.J. Little** case, which is cited in my brief, which Your Honor
 3  actually cited in a footnote in your decision.  In that case,
 4  Judge Keeton of the District Court actually states that in
 5  this instance Hill & Barlow, which was the firm seeking to
 6  withdraw, had represented Mr. Hammond in that case for almost
 7  two years.  They had represented him through the entire stage
 8  of discovery and then had been assigned a trial date.  The
 9  parties agreed to postpone the trial and enter into settlement
10  negotiations.

11          Those settlement negotiations were unsuccessful, and
12  Judge Keeton still allowed them to withdraw.  He didn't punish
13  Hill & Barlow for their trying to fulfill their client's
14  stated wishes of pursuing settlement negotiations, but he also
15  didn't punish Hill & Barlow by saying, "Well, you've done
16  discovery, you've had the settlement conference, now you've
17  actually -- you've actually got a trial date, Hill & Barlow.
18  We're not going to let you out."

19          Not in that case, Your Honor.  He allowed Hill &
20  Barlow to withdraw because Judge Keeton found that, in fact,
21  Mr. Hammond had breached his contractual obligations of good
22  faith and fair dealing.

23          That's exactly what we're talking about in this
24  instance, Your Honor.  We are -- we're in a position, and Mr.
25  Marder ends his opposition by saying the proper time for us to

 1│ have filed this motion for a stay was on April 8th when we
 2│ filed our notice of appeal. And I would suggest to Your Honor
 3│ what we would then be discussing is -- Mr. Marder is saying to
 4│ this Court, "Well, gee, Judge, we were in my -- my client's
 5│ office only two days prior hereto, and the parties agreed to
 6│ suspend the deposition because we -- Mr. Nicholson agreed with
 7│ his client to initiate settlement discussions," and, in fact,
 8│ wasn't that disingenuous because two days later he's seeking
 9│ this stay.

10│        My client expressed an interest in pursuing this.
11│ It was in my client's best interest, notwithstanding the fact
12│ that there was no possibility of our ever getting paid for any
13│ of this work. We stayed in to try to help our client achieve
14│ what he wanted to achieve in this instance, despite our best
15│ efforts, and through no fault of our own and through no fault
16│ of Mr. Cuddy's, those settlement negotiations didn't come to
17│ fruition.

18│        At this point, Your Honor, we're now back where we
19│ were before or at the time that we filed our initial motion to
20│ withdraw. Little, if any, discovery has started. Mr. Marder
21│ says, "All we want to do is complete a deposition." Well,
22│ that doesn't mean that he doesn't do more depositions. It
23│ doesn't mean that he doesn't file motions, and I've already
24│ represented to the Court there are numerous depositions that I
25│ will have to take in order to protect my clients' rights if

 1 | this stay is not granted.

 2 | Again, we would ask that the Court grant our motion.
 3 | Thank you.

 4 | THE COURT:  Mr. Marder, briefly.

 5 | MR. MARDER:  Very briefly, Judge.  We're fully
 6 | aware this Court has been required to approve any settlement,
 7 | and we even drafted a joint Rule 9019.  This was even
 8 | discussed with Mr. Donahue.  He and I had some conversations
 9 | about this.   There was -- we understood going in what this
10 | would require, so I just want to make sure that you understand
11 | we had already considered that as part of this entire process,
12 | and you have the e-mails, Judge -- again, all the exhibits to
13 | the opposition that show you this.  Thank you.

14 | THE COURT:  Well, I think the first thing I have to
15 | deal with is the fact that we have this brand new authority
16 | from the Court of Appeals which, if the movant is correct,
17 | would say that I was wrong.  I don't agree that it says that I
18 | was wrong.  I think that a bankruptcy proceeding, as to the
19 | debtor's counsel, is sufficiently different from, or differs
20 | -- different from the cases that were involved in those
21 | Circuit opinions, so that I may well be right, and I still
22 | think I'm right.

23 | I think counsel should know, at least in Courtroom
24 | #3 at 11 Causeway Street -- 10 Causeway Street -- that if
25 | you're in a case, you're in a case, and you're not going to

1  throw your client into bankruptcy and then decide to run away
2  because you don't get paid. I don't care what your contract
3  with the client says. I think that's called professionalism.
4  This is not a business. At least it's not, so long as I'm on
5  this bench it's not going to be a business. We're going to
6  pretend that it's still a profession, and I will act
7  accordingly.

8          As a result, I really don't think I'm going to get
9  overturned, especially when you consider that this is a
10  discretionary motion, and I don't think I was grossly in
11  error. Indeed, I don't think I was in error at all, or I
12  wouldn't have done it.

13          Now it's Mr. Marder's ox that's being gored by this
14  motion. This isn't just "stay the proceedings involving
15  counsel and debtor," in which case I would have no problem
16  granting the stay pending appeal. But the proposal is that I
17  stop Danvers from proceeding with its actions. Now do you
18  appeal to the District?

19          MR. NICHOLSON: Yes, Your Honor.

20          THE COURT: Rather than the BAP.

21          MR. NICHOLSON: Yes, Your Honor.

22          THE COURT: Well, that buys you two years'
23  probably, instead of about sixty days if you go to the BAP.
24  Well, let's see, Mr. Marder, what do you have? A 727?

25          MR. MARDER: Yes, and a 523. Both. And I'm

1 | estimating, Judge, again, with all due respect, less than a
2 | day to complete it, and that's it.

3 |            THE COURT:   I'm not inclined to grant the stay.  I
4 | granted the stay through this hearing so I could hear the two
5 | of you, but I'm not inclined to go forward.  Motion for stay
6 | is denied because you can go to the District and ask them.

7 |            MR. NICHOLSON:   Thank you.

8 |            THE COURT:   Very well.

9 |            MR. MARDER:   Thank you, Judge.

10 | (End at 9:39:22 a.m.)

11 |                * * * * * * * * * * * *

12 |            I certify that the foregoing is a true and accurate
13 | transcript from the electronically sound recorded record of
14 | the proceedings.

_____     6/17/05

**GLORIA C. IRWIN**                          **Date**
**Certified Transcriber NJ AOC200**
**   Federal CERT #122**
**GCI TRANSCRIPTION SERVICES**
**210 Bayberry Avenue**
**Egg Harbor Township, NJ 08234-5901**
**609-927-0299  1-800-471-0299**
**   FAX 609-927-6420**
**e-mail irwingloria@comcast.net**

## LEGAL SERVICES -- FEE AGREEMENT

I, **Lawrence E. Cuddy, Jr.**, of **48 Green Street, Newbury, MA  01951** (the "Client"), hereby agree to retain the law firm of Finneran & Nicholson, P.C. (the "Firm"), pursuant to the following terms and conditions in connection with: certain matters described in a letter dated April 30, 2004 attached hereto (the "Engagement Letter"); and such further legal matters as may hereafter be requested by you, from time to time, to be performed by this Firm until amended, as the same may be revised and evolved from time to time (the "Engagement").

    1.    **Retainer**.

        **(a)**    **Initial Retainer**.    The Firm, only upon receipt of a fully signed copy of the Engagement Letter and this Fee Agreement with an initial retainer of $2,500.00, agrees to represent Client in the Engagement (the "Initial Retainer").

        **(b)**    **Replenish Retainer**.  The Client will be required, from time to time, to replenish this Initial Retainer and/or other subsequent retainers and Client hereby agrees to do so promptly.  As set forth in the Engagement Letter, you may be required to pay the Firm a further retainer before the Firm files an appearance on your behalf in the United States Bankruptcy Court in your Chapter 7 case, which shall be determined in the sole discretion of the Firm.

        **(c)**    **IOLTA**.    Client hereby authorizes Firm to deposit Initial Retainer, all replenishments thereto and subsequent retainers in Firm's client account which is a so-called IOLTA account, and no interest thereon is earned by the Client or the Firm.

        **(d)**    **Not Flat Fee**.    Any retainer will be applied against legal services performed by the Firm and/or disbursements made for, and on behalf of, the Client as well as pay for out-of-pocket expenses, from time to time (**this does not represent a flat fee**).

        **(e)**    **Withdrawals**.  Client hereby authorizes the Firm to withdraw against the Retainer, and/or any other replenishment thereof, and/or other retainer, hereafter delivered by or on behalf of Client, from time to time, whether on the Initial Engagement or any other matter for the Client for legal fees, disbursements made for and on behalf of the Client as well as pay for out-of-pocket expenses. No further authorization is required from Client for such withdrawals, from time to time.

        **(f)**    **Return of Retainer**.    Any portion of retainer in excess of those amounts not needed to cover professional fees and/or costs shall be returned at the conclusion of the work for the Client with a close file letter.

        **(g)**    **Applicability of Fee Agreement for Future Services**. Accordingly, from and after completion of the Initial Engagement, to the extent that the Firm performs

additional services for or on behalf of Client, whether or not related to the Engagement Letter, this Fee Agreement shall continue to have full force and effect.

2.    **Out-of-Pocket, Other Disbursements and Fees**.

    **(a)**    **Out-of-Pocket, *Etc*.**    The Client agrees to assume and pay for all out-of-pocket disbursements incurred in connection with the Engagement and all other client work performed by the Firm, from and after the date first above written (*e.g.*, filing fees, federal express, word processing, photocopying, printing, binding, long distance telephone and facsimile charge, certified and/or overnight mail, delivery/messenger charges and the like, clerical and secretarial staff overtime when necessary, witness fees, computerized legal research, such as WESTLAW, travel, sheriff's and constable's fees, document recording fees, asset and information searches, expenses of depositions, investigative expenses and other incidental expenses). If a particular charge is substantial, we may request that you pay it directly to the vendor or reimburse us immediately.

    **(b)**    **Administrative Service Charge**.    The Client is also responsible for a flat general administrative fee (*i.e.*, billing, intrastate telephone, postage, filing, general secretarial other than significant word processing) equaling about 6% of the total bill for services. This general administrative fee will be identified on the monthly billing as a "6% administrative charge".

3.    **Rates for Professional Services**.

    **(a)**    **Hourly**.    Professional services of the Firm shall generally be charged for all persons becoming clients on or after October 1, 2003 at the following standard hourly rate:

> Services of Senior Partner - $275.00 per hour
> Services of Junior Partner - $250.00 per hour
> Services of Attorney, Of Counsel - $250.00 per hour
> Services of Associate - $175.00 per hour
> Services of Law Clerk - $85.00 per hour
> Services of Paralegal - $75.00 per hour
> Services of Word Processing - $20.00 per hour (for documents, agreements, *etc*.)

It is understood that the hourly time charges include but are not limited to: court appearances; telephone conferences; office conferences; travel time; legal research; depositions; review of file materials and documents sent or received; preparation for trials and/or negotiations; hearings and conferences; and drafting of pleadings, instruments, documents, agreements, correspondence and office memoranda.

**(b)**    **Other Method**.

    **(i)**    Firm may charge flat fees for preparing the initial drafts of certain types of transactional documents, responses to audit inquiry letters and for certain other activities as may be agreed upon by the Firm and Client, from time to time.

    **(ii)**    Our fees may be based on a variety of factors, including the time expended, the difficulty of the questions involved, the expertise in a particular area of the law that may be required, the magnitude of the matter, the results achieved, and customary fees for similar services.   We will discuss with Client any such arrangement which may include a flat fee for developing the first draft of an agreement or other document.

**(c)**    **Change in Fees**.    Our schedule of rates is adjusted from time to time (usually annually) and new rates will become effective under this engagement with the effective date of each adjustment.  Upon request, we will be happy to provide you with a fee schedule of individuals working on your matters.

**(d)**    **Finance Charge**.    A finance charge of twelve percent (12%) per annum will be added to accounts billed and unpaid from a previous billing  period to the fullest extent permitted by law.

**4.**    **Certain Time Billing / Status / Updates and Files  Practices**.

**(a)**    **(i)**    **Billing**.    It is impossible to predict in advance the amount of time and effort that will be needed to complete Client's case.  Any time spent relative to Client's matter, including conferences, telephone calls, drafting documents, research, court time, and necessary travel time, is billed at the above hourly rate.  A minimum period of five (5) minutes shall be billed for each action performed.  Some of the work on Client's case may be done by an associate attorney or by a paralegal assistant.  The blend of the categories of professional personnel and their respective hourly rates depend, generally, on the seriousness and complexities of the problem, the skill and experience of the lawyers and the paralegals performing the work, and the time pressures for completion of particular tasks.

    **(ii)**    **Billing Narrative**.    **PLEASE NOTE WHEN WE BILL YOU, WE MAKE A PRACTICE OF NARRATIVELY DESCRIBING MOST ACTIVITIES DONE ON YOUR MATTER DURING THE COURSE OF THE BILLING PERIOD (USUALLY MONTHLY). WE LIST MOST ACTIVITIES EVEN IF WE DO NOT BILL YOU FOR THE ACTIVITY (_I.E._, CERTAIN TELEPHONE CALLS, _ETC_.). WE DO THIS NOT ONLY TO ACCOUNT TO YOU FOR OUR TIME AND CHARGES, BUT ALSO TO INFORM YOU AS TO ACTIONS AND INACTIONS TAKEN ON YOUR MATTER AS WELL**

Page 3

**AS TO PROVIDE YOU A STATUS REPORT. WE ARE A SERVICE BUSINESS AND WE WISH TO PROVIDE YOU SERVICE AND INFORMATION AND WELCOME YOUR INPUT AT ALL TIMES.**

(b)     **Privileged Communications.**     Because of our detailed and descriptive billing, we wish to inform you that such billing may contain information that is privileged, confidential and exempt from disclosure under applicable law. Accordingly, please be careful in "publishing" and/or circulating the Firm's billing. **The billing should be directed to the intended recipient, or the employee or agent responsible for delivering the transmittal to the intended recipient; you are hereby notified that any dissemination, distribution or copying of this billing narrative communication should be strictly prohibited. Further, we recommend that you destroy/shred all our narrative billings (remembering the Firm's 9-year retention policy) or if you must retain billing, retain all billing in a secure file with all other attorney-client confidential communications.**

(c)     **Client Contact Encouraged.**     Clients are encouraged to contact Firm, from time to time, regarding the status of the Initial Engagement and any and al subsequent and/or additional legal services performed on behalf of the Client by Firm or any questions you may have regarding the foregoing.

(d)     **Files.**     Upon closing a client matter, the files are stored off-site for not more than nine (9) years and any request to retrieve files from storage will result in the Firm's then retrieval fee.

(e)     **Client Responsibility to Review Billing.     Client promises to pay promptly any and all amounts when due for services rendered by Firm to Client, as evidenced by Firm's invoices and/or replenish the Initial Retainer and all subsequent retainers when requested. Client must review each invoice carefully upon receipt and if Client does not object either to services or amounts listed on each such invoice within 30 days of mailing of such invoice, the services, activities and amounts set forth on such invoice shall be conclusive evidence of the Client's authorization of the services and activities set forth therein as well as the amounts owed by Client to Firm and the Client's knowledge, consent and approval of the services rendered for that period.**

5.     **Withdrawal from Representation Where Non-Payment.**     It is agreed that if any retainer is not replenished (for the initial Matter and/or any and all subsequent and/or additional legal services requested to be performed and performed by the Firm) to the amount requested by the Firm within 15 days of the date of the bill requesting the replenishment and/or interim or final statement, bill or invoice for services rendered is not paid, when and as due, the Firm may immediately cease providing services under this Agreement and **the Client will not oppose the Firm from withdrawing its representation of the Client and, if requested, Client will consent in writing to the Firm removing any court appearance it may have filed in connection with**

representation of the Client. This is an essential and vital agreement to the Firm's agreeing to provide services rendered.

6.    **ARBITRATION.**    CLIENT AND FIRM AGREE TO SUBMIT TO BINDING ARBITRATION (SO AS TO AVOID EXPENSE AND DELAY) ANY AND ALL FEE AND/OR OTHER DISPUTES WHICH MAY ARISE BETWEEN FIRM AND CLIENT. FEE DISPUTES SHALL BE SUBMITTED TO THE FEE ARBITRATION COMMITTEE OF THE MASSACHUSETTS BAR ASSOCIATION. CLIENT AND FIRM DEEM IT TO BE IN THEIR MUTUAL AND RESPECTIVE INTEREST TO BE BOUND BY THE DECISION OF ANY ARBITRATION.

7.    <u>No Results Guaranteed or Assured</u>.    The Firm and Client state that no results have been guaranteed by the Attorney/Firm to the Client and that this agreement is not based upon any such promises or anticipated results.

8.    <u>Restrict Access</u>.    BECAUSE OF OUR DETAILED AND DESCRIPTIVE BILLING (SEE SECTION 4 ABOVE), WE WISH TO INFORM YOU THAT SUCH BILLING MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL. ACCORDINGLY, ACCESS TO THOSE INVOICES MUST BE RESTRICTED TO YOU IN ORDER TO ENJOY THE ATTORNEY-CLIENT PRIVILEGE. PLEASE BE CAREFUL IN "PUBLISHING" AND/OR CIRCULATING THE FIRM'S BILLING.    ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION SHOULD BE STRICTLY PROHIBITED OR THE ATTORNEY-CLIENT PRIVILEGE COULD BE DEEMED TO BE WAIVED. THE BILLING SHOULD BE DIRECTED TO THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE TRANSMITTAL TO THE INTENDED RECIPIENT.

This Agreement is signed as an instrument under seal and under the pains and penalties of perjury.

_____  5/10/04
Lawrence E. Caddy, Jr.

FINNERAN & NICHOLSON, P.C.

By: _____  5·10·04
Donald H. Adler

(kc)F:\Cases\04-118\fee.agr.wpd

Page 5

Westlaw.

402 F.3d 246
402 F.3d 246
**(Cite as: 402 F.3d 246)**

**EXHIBIT C**

Page 1

# H

**Briefs and Other Related Documents**

United States Court of Appeals,
First Circuit.
Angel L. RIVERA-DOMENECH, Plaintiff,
Appellee,
v.
CALVESBERT LAW OFFICES PSC, Intervening
Defendant, Appellant.
**No. 03-1471.**

Submitted Aug. 5, 2004.
Decided March 29, 2005.

**Background:**    In proceedings stemming from
attorney's representation of client in underlying
admiralty claim, attorney appealed from order of the
United States District Court for the District of Puerto
Rico, Justo Arenas, United States Magistrate Judge,
dismissing attorney's intervening claim for payment
of fees and ordering parties to undergo arbitration.

**Holding:**    The Court of Appeals held that
arbitration of fee dispute between attorney and client
was required.
 Appeal dismissed.

West Headnotes

**[1] Admiralty ☞118.1**
16k118.1 Most Cited Cases
Attorney's claim that district court abused its
discretion in denying his motion to withdraw his
appearance as counsel for client in admiralty case,
based on client's failure to pay attorneys' fees, was
moot, where attorney did not file interlocutory appeal
from the denial of motion to withdraw and
represented the client through the trial on the
admiralty case.

**[2] Arbitration ☞7.5**
33k7.5 Most Cited Cases
Arbitration of fee dispute between attorney and client
was required, where attorney had agreed in his
original fee agreement to have an arbitrator decide
fee disputes, not the court, and the attorney drafted
the original fee agreement referring all disputes to

arbitration.
***247 Paul E. Calvesbert, Enrique A. Báez, and
Calvesbert Law Offices PSC on brief for appellant.

Before TORRUELLA, Circuit Judge, COFFIN,
Senior Circuit Judge, and LYNCH, Circuit Judge.

PER CURIAM.

 This case involves the efforts by an attorney to
convince a federal court to permit him to withdraw
his appearance or at least require that his client pay
him for his work in a trial.    Attorney Paul E.
Calvesbert (or more accurately, his professional
services corporation) represented Rivera-Domenech
in an admiralty case in federal court between Angel
L. Rivera-Domenech and Quality Boat Services (and
other defendants).

**I.**

 We describe the facts as alleged by attorney
Calvesbert.    In January 1998, Rivera-Domenech
retained Calvesbert to represent him in the underlying
admiralty action (for simplicity, we refer to the law
firm and the lawyer collectively with the lawyer's
name).    In late February 1998, Calvesbert sent
Rivera-Domenech a fee agreement, which Rivera-
Domenech executed on March 2, 1998. In April of
1998, Calvesbert filed a federal complaint for Rivera-
Domenech against Quality Boat Services and other
defendants, and then proceeded to pursue the
admiralty action.    By October of 2000, the lawyer
and the client were in the middle of a fee argument.
According to Calvesbert, Rivera-Domenech by then
owed him more than $10,000.

 The bench trial before a magistrate judge started on
October 16, 2001;  the trial was then continued on
October 17 until November 7, 2001.   A further series
of reschedulings followed and trial was ultimately set
for April 23, 2002.

 On March 26, 2002, Calvesbert attempted to resolve
the fee amount owed, now around $60,000, by
proposing in a letter that Rivera-Domenech convert
the representation agreement into a contingency fee
arrangement. Calvesbert gave a deadline of April 1
to respond or Calvesbert would file a motion to
withdraw his appearance in the case.   On April 8,
Rivera-Domenech responded.     In his response,
Rivera-Domenech attacked the integrity of his

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

lawyer; no resolution was reached on the fees.

Calvesbert then moved to withdraw from representation for lack of payment and irreconcilable differences on April 10, 2002, and sought continuance of the April 23 trial date. Calvesbert did not then ask in the alternative for the court to order the payment of fees. On April 12, 2002, the magistrate judge denied the motion to withdraw, without hearing, commenting only that "[t]he trial will not be continued."

Calvesbert, on April 15, 2002, moved the court to reconsider the denial of his motion to withdraw on the ground of irreconcilable differences and argued that his fee agreement permitted him to withdraw. A copy of the fee agreement was attached and contained an arbitration provision:

Any controversy, claim or dispute in the course and scope of the lawyer-client relationship or arising out of or relating to this Proposal or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of *248 this agreement to arbitrate (hereinafter the "Dispute"), shall be determined by arbitration in San Juan, Puerto Rico, before a sole arbitrator, in accordance with the laws and rules of professional conduct of the Commonwealth of Puerto Rico. "Disputes" shall include, without limitation, those involving fees, costs, billing, claims of professional negligence, malpractice and breach of ethical or fiduciary duties. The arbitration shall be administered by the American Arbitration Association (AAA) pursuant to its Commercial Arbitration Rules and Supplementary Procedures for Large, Complex Disputes. The arbitrator shall be a licensed attorney in Puerto Rico and a member of the AAA Panel of Arbitrators.

This motion was also denied "[n]otwithstanding the deterioration of the relationship between counsel and client." Calvesbert then filed an "Urgent Appeal From Magistrate Judge's Orders" pursuant to 28 U.S.C. § 636(b)(1)(A) and the Local Rules of the District of Puerto Rico. This "appeal" was an appeal to the district court from the order by the magistrate judge, but it was denied by the magistrate judge. [FN1] Calvesbert did not seek to file an interlocutory appeal to this court from the denial of the motion to withdraw. The result was that Calvesbert was effectively required to continue to represent Rivera-Domenech, a hostile client, at trial without payment at the time. Bench trial before the magistrate judge was held on April 23, 25, and May 13, and the court, on its own motion, set further bench trial for six days

in September 2002, starting with September 3.

> FN1. We do not understand why this appeal was not ruled upon by the federal district judge, who was the proper decision maker for the appeal. See 28 U.S.C. § 636(b)(1)(A) ("A [district] judge of the court may reconsider any pretrial matter [decided by the magistrate] ... where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). The motion also referred to what was then Rule 510 of the Local Rules of the District of Puerto Rico, which stated, "The [district] Judge to whom the case is assigned shall consider the appeal and shall set aside any portion of the Magistrate Judge Order found to be clearly erroneous or contrary to law." D.P.R.R. 510. In any event, this procedural problem was not raised on appeal before this court.

Trying another tack, Calvesbert sought an order that he be paid reasonable fees because he was being forced to continue to represent Rivera-Domenech by the court. Calvesbert moved to intervene as a third-party plaintiff on June 17, 2002, against Rivera-Domenech, to assert his attorney's fees claim. Rivera-Domenech did not object. The magistrate judge allowed Calvesbert permissive intervention on June 20, 2002. On August 5, 2002, Calvesbert filed his first motion requesting an order from the court that his client pay him the sums claimed--$82,641.94--as a corollary of the order denying his motion to withdraw. This was before trial recommenced in September. The court on August 27, 2002, denied that motion without comment.

After the bench trial ended on September 13, 2002, the court granted Calvesbert and Rivera-Domenech 20 days to meet and settle their fee differences, and if they failed, to let the court know so that a trial date for the intervenor claim for payment of fees could be set. It is unclear what amount in fees Calvesbert thought Rivera-Domenech owed at that point.

On October 23, 2002, Rivera-Domenech filed a pro se motion alerting the court to the arbitration clause in the original fee agreement. The court treated the motion as a motion for an order compelling arbitration of the fee dispute, ordered the parties to undergo arbitration, and dismissed *249 Calvesbert's intervening claim for payment of fees without prejudice on December 30, 2002.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## II.

Calvesbert was ultimately unsuccessful in the attempt below to obtain the desired relief from the district court: payment of fees both from before and after the denial of the motion to withdraw his appearance. Calvesbert presents four arguments on appeal: 1) the district court erred by not allowing him to withdraw before commencement of or during trial; 2) the district court should have held a hearing on his motion to withdraw; 3) the district court should have conditioned Calvesbert's continued representation of Rivera-Domenech upon posting of adequate security by Rivera-Domenech to cover reasonable attorney's fees; and 4) the district court should not have sent the attorney's fee dispute to arbitration. The client, Rivera-Domenech, has not filed a reply on appeal.

[1] We make a point clear at the start. At the time of the entry of the denial of the motion to withdraw, there was interlocutory jurisdiction to take an appeal to this court. *See Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.,* 310 F.3d 537, 539 (7th Cir.2002); *Whiting v. Lacara,* 187 F.3d 317, 319-20 (2d Cir.1999). Calvesbert should have pursued the interlocutory appeal at the time of the denial of his motion to withdraw his appearance. [FN2] In similar circumstances, circuit courts, including this one, have found the denial of a motion to withdraw to be an abuse of discretion. *See, e.g., Fidelity,* 310 F.3d at 540-41; *Lieberman v. Polytop Corp.,* 2 Fed.Appx. 37, 39-40 (1st Cir.2001) (unpublished opinion). In *Lieberman,* we reversed the district court's denial of a motion to withdraw and explained:

> FN2. We do not suggest that Calvesbert waived his right to a final appeal by failing to file an interlocutory appeal, only that he has limited the relief available. The general rule is that failure to take an interlocutory appeal does not automatically foreclose review after final judgment. *See* 16 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3921, at 19 (2d ed. 1996) ("[F]ailure to take an available [interlocutory] appeal does not of itself waive the right to secure review, on appeal from final judgment, of matters that could have been appealed but were not.").

It simply expects too much of counsel to expend the additional energy necessary to go to trial, and to front the necessary expenses, without any real assurance that he will be paid for any of it,

especially where he already is owed a substantial sum and the client has violated the written fee agreement. Further, if counsel does not expend the necessary effort and does not front the trial expenses, he very well could expose himself to civil liability to his client. We refuse to place counsel in such a position.

2 Fed.Appx. at 39-40. Here, in addition, it is plain there was an irretrievable breakdown between client and counsel, yet the court refused to allow Calvesbert to withdraw.

By not taking an interlocutory appeal, Calvesbert has effectively mooted any relief from the erroneous order denying his motion to withdraw. He has now represented the client through the trial. His claim that the district court should have held a hearing on the motion to withdraw is similarly moot.

Moreover, as for Calvesbert's claim that the district court should have conditioned his continued representation of Rivera-Domenech upon the client's posting of adequate security, he has waived the argument by not asking for such relief from the district court in the proceedings below. ***250** See McCoy v. Mass. Inst. of Tech.,* 950 F.2d 13, 22 (1st Cir.1991).

[2] That leaves Calvesbert's appeal from the order compelling arbitration and dismissing his claim for fees without prejudice. The only relief Calvesbert wants at this point is that the court, not the arbitrator, decide the fee issue. Whether the district court had ancillary jurisdiction to issue such an order is a nice question. Two members of this panel conclude it did; one concludes it did not. But we make no holding on the point.

Courts have rested the exercise of jurisdiction over fee disputes related to proceedings before them on the doctrine of ancillary jurisdiction. [FN3] *See, e.g., Pay Tel. of Greater N.Y., Inc. v. Sheridan,* 766 F.2d 92, 94 (2d Cir.1985) (explaining that "in setting fees [due a withdrawing attorney] the district court is exercising ancillary jurisdiction"); *Jenkins v. Weinshienk,* 670 F.2d 915, 918 (10th Cir.1982) (considering "the scope of a federal trial court's ancillary jurisdiction to adjudicate fee disputes").

> FN3. The Supreme Court has explained ancillary jurisdiction as a way "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

402 F.3d 246
402 F.3d 246
(Cite as: 402 F.3d 246)

Page 4

511 U.S. 375, 379-80, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *see also* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3567.3, at 96 (Supp.2004).

A court's power to protect a lawyer against unfairness by his client in the context of a motion to withdraw seems to be an inherent power necessary to effectuate orderly judicial proceedings. *See, e.g., Fed. Sav. & Loan Ins. Corp. v. Ferrante,* 364 F.3d 1037, 1041 (9th Cir.2004) (surveying cases in which courts had jurisdiction to resolve "attorney fee disputes collateral to the underlying litigation").

But there are disagreements about the scope of that jurisdiction. In *Broughten v. Voss,* 634 F.2d 880 (5th Cir.1981), the court held that the district court had no ancillary jurisdiction, sua sponte, to make resolution of a fee dispute between a law firm and its client a condition precedent for granting the law firm's motion to withdraw. *Id.* at 881-83. As the outcome in *Broughten* illustrates, whether ancillary jurisdiction exists over this particular dispute is a question over which reasonable minds may disagree. However, the particular facts of this case make it unnecessary to resolve this question definitively.

Regardless of the jurisdictional issue, the resolution that Calvesbert must go through arbitration is correct. Calvesbert wanted the district court to resolve the fee dispute in his favor, but "the strong federal policy favoring arbitration agreements ... requires us to resolve any doubts concerning arbitrability in favor of arbitration," *Commercial Union Ins. Co. v. Gilbane Bldg. Co.,* 992 F.2d 386, 388 (1st Cir.1993) (internal quotation marks omitted). Calvesbert had agreed in his original fee agreement to have an arbitrator decide the fee dispute, not the court. There is no unfairness: Calvesbert drafted the original fee agreement referring all disputes to arbitration. Nor did Rivera-Domenech waive his rights to demand arbitration.

We *dismiss* Calvesbert's appeal for lack of merit. No costs are awarded.

402 F.3d 246

**Briefs and Other Related Documents (Back to top)**

•                    03-1471_____(Docket)
(Apr. 08, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Westlaw.

2 Fed.Appx. 37
2 Fed.Appx. 37, 2001 WL 196759 (1st Cir.(R.I.))
**(Cite as: 2 Fed.Appx. 37, 2001 WL 196759 (1st Cir.(R.I.)))**

## C

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

NOT FOR PUBLICATION NOT TO BE CITED AS PRECEDENT

Please use FIND to look at the applicable circuit court rule before citing this opinion. First Circuit Rule 36(b). (FIND CTA1 Rule 36.)

United States Court of Appeals,
First Circuit.
George E. LIEBERMAN, Movant, Appellant,
INDUSTRIAL DISTRIBUTION CORPORATION,
Plaintiff, Appellee,
v.
POLYTOP CORPORATION; Gerhard Hutter;
Woodrow Wilson; Robert Harding,
Defendants.
George E. LIEBERMAN, Movant, Appellant,
INDUSTRIAL DISTRIBUTION CORPORATION,
Plaintiff, Appellee,
v.
POLYTOP CORPORATION; Gerhard Hutter,
Defendants, Appellees,
Woodrow Wilson; Robert Harding, Defendants.
**Nos. 00-1766, 00-1827.**

Feb. 21, 2001.

Attorney brought motion to withdraw from representation of his clients in civil action for failure to pay over $80,000 in legal fees. The United States District Court for the District of Rhode Island, Ernest C. Torres, J., denied motion. Attorney appealed. The Court of Appeals held that: (1) district court's interlocutory order denying motion to withdraw was reviewable, and (2) attorney was entitled to withdraw from representation.

Reversed and remanded.

West Headnotes

[1] Federal Courts ☜☞572.1
170Bk572.1 Most Cited Cases

Order which does not terminate action by disposing of all rights of parties nevertheless is reviewable on appeal if: (1) order conclusively resolves important question (2) which is entirely separate from merits and (3) if matter will evade adequate review on appeal.

[2] Federal Courts ☜☞576.1
170Bk576.1 Most Cited Cases

District court's order denying attorney's motion to withdraw, which had result of requiring attorney to continue representing client in civil action without compensation, although interlocutory, was reviewable; order conclusively resolved important question entirely separate from merits, matter would evade adequate review on appeal, and order could subject attorney to irreparable harm and amounted to order of specific performance.

[3] Attorney and Client ☜☞76(1)
45k76(1) Most Cited Cases

[3] Federal Courts ☜☞813
170Bk813 Most Cited Cases

Grant or denial of attorney's motion to withdraw in civil case is matter addressed to discretion of trial court and will be reversed on appeal only when trial court has abused its discretion.

[4] Attorney and Client ☜☞76(1)
45k76(1) Most Cited Cases

Attorney could withdraw from representation in civil case based on clients' failure to pay over $80,000 in fees, in derogation of written fee agreement, where clients were given sufficient warning that failure to pay would result in attorney's withdrawal from case, clients' private attorney revealed that clients had no reasonable prospect of being able to pay him unless litigation was successful, attorney faced significant financial exposure by being required to go forward, and it was still relatively early stage of litigation. U.S.Dist.Ct.Rules D.R.I., Local Rule 4(d); R.I. Sup.Ct.Rules, Art. V, Rules of Prof.Conduct, Rule 1.17(b)(4-6).

**\*38** Appeals from the United States District Court for the District of Rhode Island; Ernest C. Torres, U.S. District Judge.

George E. Lieberman and Tillinghast, Licht, Perkins, Smith & Cohen, on brief, for appellant.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Gerhard P. Hutter, on brief, pro se.

Before TORRUELLA, Chief Judge, LEVIN H. CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.

PER CURIAM.

**\*\*1** The court has determined that oral argument may be dispensed with in this case. *See* Fed.R.App.P. 34(a)(2)(C); 1st Cir.Loc.R. 34(b). After a thorough review of the record and of the parties' submissions, we find that we do have jurisdiction over this interlocutory appeal, and we reverse the lower court's decision denying appellant George E. Lieberman's ("Lieberman's") motion to withdraw from his representation of his clients, Industrial Distribution Corporation ("IDC") and Gerhard Hutter ("Hutter").

[1][2] This is an appropriate interlocutory appeal under the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). An order which does not terminate an action by disposing of all rights of the parties nevertheless is reviewable if: 1) the order conclusively resolves an important question 2) which is entirely separate from the merits and 3) if the matter will evade adequate review on appeal. *Id.; United States v. Quintana-Aguayo,* 235 F.3d 682, 684 (1st Cir.2000). It is clear that the order below conclusively resolved an important question entirely separate from the merits: the question of whether appellee's attorney should be allowed to withdraw. Furthermore, we find that the matter will evade adequate review on appeal. An order requiring an attorney to continue representing a client in a civil action without compensation may subject the attorney to **\*39** irreparable harm and amounts to an order of specific performance. *See Whiting v. Lacara,* 187 F.3d 317 (2d Cir.1999). We may proceed to the merits.

[3] "The grant or denial of an attorney's motion to withdraw in a civil case is a matter addressed to the discretion of the trial court and will be reversed on appeal only when the trial court has abused its discretion." *See Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 135 (1st Cir.1985) (quoting *Washington v. Sherwin Real Estate, Inc.,* 694 F.2d 1081, 1087 (7th Cir.1982)). We conclude that in this instance, the lower court did abuse its discretion.

Rhode Island District Court Local Rule 4(d) provides that "[t]he Rules of Professional Conduct of

the Rhode Island Supreme Court shall be the standard of conduct for all attorneys practicing before this court," and the supreme court rules in turn provide the grounds upon which an attorney may seek leave to withdraw. Those rules in part provide that an attorney may withdraw if:

(4) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(6) other good cause for withdrawal exists.

R.I. S.Ct. R. 1.17(b)(4)-(6). These factors provide grounds for withdrawal even where withdrawal cannot be accomplished "without material adverse effect on the interests of the client." *See* R .I. S.Ct. R. 1.17(b) ("[A] lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, *or* if ... (4) the client fails substantially ....") (emphasis added).

**\*\*2** [4] Clearly Hutter has "fail[ed] substantially to fulfill an obligation to [Lieberman] regarding the lawyer's services," R.I. S.Ct. R. 1.17(b)(4), because he has failed to pay Lieberman over \$80,000 in fees owed to him, in derogation of their written fee agreement. Before moving to withdraw, Lieberman also gave him sufficient warning that a failure to bring his account up to date would result in his withdrawal from the case. Though only three weeks passed between the time the first bill became past due and the time Lieberman moved to withdraw, three additional weeks passed before the district court heard and denied the motion. In that interim, Hutter's private attorney revealed that Hutter had no money to pay Lieberman, and Hutter indicated he had no reasonable prospect of being able to pay him unless the litigation was successful. Also, in previous months Lieberman repeatedly had to remind Hutter to bring the retainer back up to its required balance, so Lieberman's quick action once the first payment became past due seems reasonable.

Thus, withdrawal under the circumstances certainly would have been consistent with the Local Rules. Further, Lieberman faces substantial additional financial exposure should he be required to go forward. Several pretrial matters have yet to be resolved, and the trial itself will last more than a week. Counsel already has expenses that have not been reimbursed, and there may well be additional

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2 Fed.Appx. 37
2 Fed.Appx. 37, 2001 WL 196759 (1st Cir.(R.I.))
(Cite as: 2 Fed.Appx. 37, 2001 WL 196759 (1st Cir.(R.I.)))

Page 3

substantial expenses that will need to be incurred at trial. It simply expects too much of counsel to expend the additional energy necessary to go to trial, and to front the necessary expenses, without any real assurance that he will be paid for any of it, especially **\*40** where he already is owed a substantial sum and the client has violated the written fee agreement. Further, if counsel does not expend the necessary effort and does not front the trial expenses, he very well could expose himself to civil liability to his client. We refuse to place counsel in such a position. Under these circumstances, the lower court abused its discretion in refusing to let Lieberman withdraw.

Furthermore, Hutter was less than forthcoming with Lieberman when he signed the fee agreement. Apparently Hutter knew from the beginning that he would be unable to pay his legal fees if he were not successful in the litigation. It appears that he and his wife expected that as a practical matter, Lieberman's representation of them at some point would evolve into a contingency arrangement, whereby Lieberman was to be paid (if at all) out of the proceeds of the litigation. But that was not the arrangement to which Lieberman agreed. Under these circumstances, fairness dictates that Hutter, not Lieberman, suffer the consequences of his own failure to honor his agreement.

Further, we do not think the decision here should hinge entirely on the assertion that the case was nearly ready for trial. Despite the court's apparent attempts to move this case to trial quickly, that goal does not seem to have been realistic. At least one discovery dispute was outstanding; that dispute had been referred to a magistrate judge, who had not set the matter for hearing until approximately two weeks *after* the trial judge had planned to try the case. A partial summary judgment motion was not fully briefed until approximately two weeks before the trial date, and that, too, had been referred to the magistrate judge. Moreover, the opposing party apparently is not pushing to get the matter to trial, as it agreed to a stay of all proceedings pending this appeal. Though certainly a district court should consider the stage of the litigation when deciding an attorney's motion to withdraw, here we find that the timing issues should not have been determinative.

**\*\*3** *Appellant's motion to strike is denied. Appellee's motion to file reply brief is allowed. The decision of the lower court is reversed, and the case is remanded for further proceedings consistent with this order.*

2 Fed.Appx. 37, 2001 WL 196759 (1st Cir.(R.I.))

**Briefs and Other Related Documents (Back to top)**

| | | |
|---|---|---|
| • | 00-1827 | (Docket) |
| (Jun. 29, 2000) | | |

| | | |
|---|---|---|
| • | 00-1766 | (Docket) |
| (Jun. 22, 2000) | | |

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.